## WILLIAM R. WILSON v. THE STATE.

Article 630 of the Code of Criminal Procedure reads as follows: "Where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree, (naming it,) but guilty of any degree inferior to that charged in the indictment." (Paschal's Dig., Art. 3095.) And by the first division of article 631, one of the degrees is thus given: 1. "Murder, which includes all the lesser degrees of culpable homicide." (Paschal's Dig., Art. 3096.) Where the defendant was indicted for murder, and there was a count in the indictment which also charged cruel and unusual treatment to a slave, the verdict, which acquitted the defendant of murder, and found him guilty of the cruel and unusual treatment, was not warranted by the law.

The sixth division of article 631 declares, that "Every offense against the person includes within it assault with intent to commit said offense, when such assault is a violation of the penal law." (Paschal's Dig., Art. 3096.) If a party be indicted for murder and a violent assault, and wounding be proved, but if the jury be not satisfied that the party died of the wound, they may find the accused guilty of assault with intent to kill.

If the chastisement of a slave was so severe as to cause death, it is believed that the lesser offense was merged in the greater by the 674th article of the Penal Code, which declared, that if, by reason of abuse or cruel treatment to a slave, death shall result, the offense is murder.

The jury having found the defendant not guilty of murder, there was no state of facts which would warrant a verdict for mere cruel treatment, which was punishable only by fine and imprisonment.

APPEAL from Harris. The case was tried before Hon. JAMES A. BAKER, one of the district judges.

The offense was alleged to have been committed, and the indictment was found in 1861, but the case was not tried until the March term of 1865. The record erects one of those monuments which mark the line between the present and the past, and the decision cannot be a precedent to guide men in their future conduct towards an unfortunate class of human beings. By the slave code of Texas, which perished with the other barbarisms of the institution, it was declared, that "if any person shall unreasonably abuse or cruelly treat a slave, whether his

own property or the property of another, he shall be fined not less than $100 nor more than $2,000.

"It is unreasonable abuse of a slave to inflict a chastisement by whipping or otherwise greatly disproportioned to the nature of the offense which provoked such chastisement, or to beat with unusual instruments any such slave."

"If, by reason of abuse or cruel treatment to his slave, death shall result, the offense is murder." (Criminal Code, Arts., 670, 671, 674; O. & W. Dig., p. 542.)

The indictment was against Wilson and one McMorris, and had two counts: one for murder, in the ordinary form; the other ran, that the defendants did feloniously, willfully, and of their malice aforethought, unreasonably abuse and cruelly treat the said Nat, a slave, by inflicting upon him, said Nat, a slave, an unusual degree of punishment, without just provocation, and did then and there, with a certain gutta-percha strap, upon the body of the said Nat, a slave, inflict a great number of stripes and blows, to wit, six hundred stripes, by reason of which abuse and chastisement the said Nat did, on the day aforesaid, die; and so the jurors aforesaid, upon their oath aforesaid, say that the said William R. Wilson and McMorris the said Nat, a slave, in manner and form as aforesaid, feloniously, willfully, and of their malice aforethought, did kill and murder. Wilson alone was put upon trial.

There is no statement of facts in the record; and hence the charge of the court, which was long, cannot be material.

It is enough that it was charged, that the jury might find the accused guilty of cruel and unusual punishment, and assess a fine, not exceeding $2,000. The statutory distinctions were drawn, and there was a charge to the effect, that if the death was by the use of "thumb-screws and monkey-wrenches," it would be murder in the first degree; but if by the ordinary implement of punishment, it would be murder in the second degree. The jury found the defendant not guilty of murder, but guilty of cruel treatment, and

assessed the fine at $2,000. There was a judgment for the fine, and to commit the accused until it be paid.

The defendant moved to set aside the verdict of guilty and arrest the judgment. The motion was overruled, and the defendant appealed.

*James Masterson,* with whom were *Henderson & Johnstone,* for appellant.—For the appellant, Wilson, it is contended, that the verdict of the jury is not responsive to the allegations of the indictment. The indictment was based upon Arts. 608 and 674, Penal Code, and it cannot be said that Art. 615 of the Code has any bearing upon the case.

The indictment charges the murder to have been committed by torture, and details the facts and circumstances of the torture, terminating in the death of the negro "Nat."

Article 674: "If, by reason of abuse or cruel treatment to a slave, death shall result, the offense is murder."

The language of the article is, "the offense is murder." The finding of the jury is under article 670, but it is urged that the indictment shows the offense it contemplated was that defined by article 674, *i. e.,* murder. Under the Code, the punishment of murder of the first degree is death, and the punishment of murder of the second degree shall be confinement in the penitentiary for not less than five years. (O. & W. Dig., Art. 612, p. 534.)

"Under an indictment for a felony, there can be at common law no conviction for misdemeanor." (Commonwealth v. Gable, 7 S. and R., 433; Commonwealth v. Newell, 7 Mass., 245; State v. Kennedy, 7 Blackf., 233; Wright v. State, 5 Ind., 527; State v. Valentine, 6 Yerger, 533.)

The Code treats cruelty to slaves and murder of a slave by use of means mentioned in article 608 as distinct offenses. If the facts bring the case within the definition of murder, then there is no inquiry as to whether the person murdered was a slave or white person. Murder of a slave and of a white man was the same offense, and so much of the

indictment as relates to " Nat " being a slave was sur-
plusage.

The Supreme Court of Texas, in the case of The State v.
Pierce, decided at Austin, (opinion not published,) [26
Tex., 114] says, that " If an indictment charged in terms
an aggravated assault, and set forth the circumstances of
aggravation, upon exception to it the question before the
court would be, whether it was a good indictment for an
aggravated assault; and if the court should deem the ex-
ception well taken, its judgment should not be to retain it
as a good indictment for simple assault, but to quash it,
in response to the exception."

By section 1, article 8, of our present State constitution,
slavery has no legal existence within the State, (except as a
punishment for crime.) It is respectfully submitted, that as
the offense, as found by the jury, was cruelty to a slave, the
punishment awarded cannot be enforced or inflicted: for
this reason, that the law under which Wilson was convicted
stands repealed by the above-quoted clause of the new con-
stitution. This is the law, as ruled in the case of the United
States v. The Schooner Peggy. (1 Cranch, 37, 40.)

" And the principle is held to apply as well to the pro-
ceeding upon appeal in the appellate court as to the court
having original cognizance of the offense; and as well, when
repeal took effect, after the removal of the cause to the ap-
pellate court as before." (1 Cranch, 37, 40.)

The jury found Wilson not guilty of murder in any de-
gree. Having done this under the indictment in this case,
it was as competent for them to find him guilty of horse-
stealing or burglary, as for them to find him guilty of cruel
treatment to a slave. If the indictment embraced both
offenses, it is fatal for duplicity, and the motion in arrest
of judgment must be sustained.

*F. C. Hume,* for the State.—The only point involved in
the appeal is, whether, under the indictment, the jury

could render a verdict for "cruel treatment," and the court so enter up the judgment.

It is respectfully submitted that there was no error in the ground assumed by the court for overruling the motions of defendant, as the averments of the indictment are divisible, and cover clearly the verdict and judgment; and in criminal cases it is sufficient for the prosecutor to prove so much of the charge as constitutes an offense punishable by law. (Ros. Cr. Ev., 99, 100; 1 Phil. on Ev., 501; The State v. Shoemaker, 7 Miss., 177.)

As to the definition and punishment of the offense found by the jury, reference is asked to O. & W. Dig., Arts. 670, 671, 672.

DONLEY, J.—At the request of counsel representing the State, the court charged the jury that if appellant was the employer of the slave Nat, and, as such, inflicted or had inflicted greater chastisement than was necessary under the circumstances, or used or caused to be used unusual instruments in punishing the slave, then appellant could be convicted of the crime of cruelty to a slave, and punished by fine not less than $100 and not exceeding $2,000. The jury returned a verdict of not guilty of murder, but guilty of cruel treatment, and assessed the highest pecuniary fine against the defendant authorized by law. The defendant moved the court to set aside that portion of the verdict finding him guilty of cruel treatment and assessing a fine against him; also moved in arrest of that portion of the judgment assessing a fine against him. The motion was overruled.

By article 630, Code of Criminal Procedure, it is provided, that where a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree, (naming it,) but guilty of any degree inferior to that charged in the indictment. By article 631 it is provided, that "certain offenses include

different degrees: (1) murder, which includes all the lesser degrees of culpable homicide."

The verdict does not find the defendant guilty of a homicide at all, and it is clear that the judgment rendered in this case is not warranted by the paragraph of the article cited. Paragraph 6 of same article provides, that every offense against the person includes within it assaults with intent to commit said offense, when such assault is a violation of the penal law. If a case shall arise in which a party has made an unlawful, felonious assault on another, inflicting a wound, and death follows the wounding, but from the evidence the jury are unable to say that the wounding caused the death, yet, if the evidence shall clearly satisfy them that the assault was made with the intent of taking life, a case may be presented authorizing the courts to punish for the assault, with the intent to commit murder, upon an indictment charging the commission of the offense. The record, however, does not present such a case, and its discussion would be premature at this time.

The jury do not find the defendant guilty of the offense alleged against him, nor do they find him guilty of an attempt to commit that offense. He is not found guilty of a felony, but of a misdemeanor. The fine being the highest punishment that could be inflicted upon the defendant for the offense of which he is convicted, and there being in the record no statement of facts, induces the belief that the acts of the defendant were in gross violation of law, probably meriting a much higher penalty than was adjudged against him.

The verdict, in effect, finds that the acts of the defendant were illegal and in violation of law. It is not alleged that such finding was not warranted by the facts in evidence. If the chastisement of the negro was so severe as to cause death, it is believed that the lesser was merged in the greater offense. By Art. 674, O. & W. Dig., (Penal

Code,) it is provided that, "If by reason of abuse or cruel treatment to a slave death shall result, the offense is murder." The verdict finds that the defendant was guilty of cruel treatment. The law cited is, that if death ensue, the offense is murder. If, then, the facts show a case of cruel treatment, and death resulted from those acts, it would be murder; and we can conceive of no rational ground upon which the jury might return such verdict, except it be, that from the evidence, while they believed the chastisement to have been unreasonable and cruel, they doubted whether the chastisement caused the death.

However unwilling we may be to disturb a verdict and arrest a judgment inflicting a penalty however inadequate to the offense alleged, and to permit the violator of law to go acquitted of all punishment, we must find in the law authority for any such judgment as shall be made; and we know of no warrant in the law to impose a pecuniary penalty on trial of a charge for murder.

Human life cannot be held so cheap that a party wrongfully depriving another of it may be discharged on paying a fine to the State, as is believed was done in the earlier history of our ancestors in certain cases of homicide. (4 Black. Com., 193.)

A verdict of not guilty being returned by the jury as to the offense charged, and the defendant not being found guilty of any homicide, a judgment discharging the defendant should have been rendered on the verdict. This court will now enter such judgment as should have been rendered by the district court.

The judgment is reversed, and the appellant

DISCHARGED.