[No. 1323.]

## Ex-Parte NICHOLAS CURNOW.

INDICTMENT FOR HOMICIDE—VERDICT OF ASSAULT WITH INTENT TO KILL.—Under an indictment for murder a defendant may be lawfully convicted of an assault with intent to kill, under the statute which provides that " in all cases the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or may be found guilty of an attempt to commit the offense charged."

APPLICATION for discharge on *habeas corpus.*

The facts are stated in the opinion.

*Baker & Wines* for Petitioner.

I.    Even though a court be one of general jurisdiction, if it attempts to pronounce a judgment not warranted by law is judgment is an absolute nullity, and the writ of *habeas corpus* is a proper one to invoke.   (*Ex-parte Rosenblatt,* 19 Nev. 440; *Ex-parte Lange,* 18 Wallace, 176; *Ex-parte Reed,* 100 U. S. 23; *Ex-parte Yarbrough,* 110 U. S. 653; *Ex-parte Hans Neilsen,* 131 U. S. 176; *In re Snow,* 120 U. S. 285; *Ex-parte Hollis,* 59 Cal. 406; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 565; *Ex-parte Sylvester,* 81 Cal. 199.)

II.    The crime of " an assault with intent to kill " is not necessarily included in the charge of murder, for the reason that the crime of murder may be committed without any intention on the part of the slayer to take life, but the very gist of the crime of assault with intent to kill is the intent to take life, existing in the mind of the defendant.   (*State* v. *Lopez,* 15 Nev. 413; *State* v. *Huber,* 8 Kan. 450; *Sweeden* v. *State,* 19 Ark. 206; *Commonwealth* v. *Roby,* 12 Pick. 500; Bishop Crim. Law, Vol. 1, Sec. 795; *Ex-parte Gibson,* 31 Cal. 628.)

III.    The judgment and conviction in this case, not being supported by any charge in the indictment, is unwarranted by the constitution, is a conviction without due process of law, and is therefore null and void.   (*Ex-parte Hans Neilsen,* 131 U. S. 176.)

*Peter Breen,* District Attorney, for the State.

(No brief on file.)

By the Court, HAWLEY, C. J.:

Petitioner was jointly indicted with William Curnow for the

crime of murder. The charging portion of the indictment is as follows: " That heretofore, to-wit, on or about the 13th day of September, A. D. 1889, * * * in the county of Eureka, state of Nevada, the said defendants, William Curnow and Nicholas Curnow, did then and there feloniously, unlawfully, premeditatedly, and with malice aforethought, shoot and wound one William Courtney and inflict upon the body of him, the said William Courtney, a mortal wound, of which mortal wound the said William Courtney, * * * on or about the 18th day of October, A. D. 1889, * * * died." They were jointly tried under this indictment and found " guilty of an assault with intent to kill," and upon this conviction the court sentenced this petitioner to six years' imprisonment in the state penitentiary, where he is now confined. Petitioner contends that his imprisonment is illegal, because, as he claims, the verdict is absolutely void, and that the court had no jurisdiction to impose such a sentence.

Is the verdict rendered by the jury responsive to the issues raised by the indictment? Can a defendant under an indictment for murder be convicted of any offense less than manslaughter? The answer to these questions depends, to some extent, upon the evidence that was submitted at the trial, and it is questionable, to say the least, whether under the writ of *habeas corpus* they can be reviewed where the petition simply sets forth the indictment and verdict. It may be that under the proofs in this case the verdict was contrary to law, wholly unwarranted and unauthorized by the evidence. The only question, however, which we are called upon to determine in this proceeding is whether in any conceivable case, under any possible state of facts, such a verdict can be sustained upon a charge of murder in the form mentioned in the indictment. If it can, then it is admitted that petitioner should be remanded to the custody of the warden of the state prison. Our statute provides that " in all cases the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment, or may be found guilty of an attempt to commit the offense charged." (Gen. Stat Sec. 4292). It must be admitted that there are many cases where the crime of an assault with intent to kill is not necessarily included in the crime of murder. A defendant may, in certain cases, be convicted of murder in the first degree

when the evidence clearly shows that there was no intent whatever upon the part of the defendant to kill the deceased. If a defendant sets fire to a house, without any knowledge that it is inhabited by any human being, with the intent only to commit the crime of arson, and a person therein was killed by the burning of the house, the defendant could be indicted and found guilty of murder. (Gen. Stat. Sec. 4620.) So in all the cases enumerated in section 17 of the act concerning crimes and punishment where the killing is committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary. (Gen. Stat. Sec. 4581.) This is precisely what was meant, and all that was decided in *State* v. *Lopez*, 15 Nev. 413, cited by petitioner, wherein it was said that under this statute "there may be murder without any intent to kill."

There are other cases, that need not be here enumerated, where a conviction for murder could be sustained against a defendant without any direct proof of an intent on his part to kill, murder being the natural result and consequence of his unlawful act. But the assault and the intent with which the assault is committed by the defendant are, in a majority of cases, essential links in the chain of evidence necessarily included, as material ingredients constituting the crime of murder. These acts, being included as a part of the entire transaction, must necessarily be considered in determining the crime, if any, committed by the defendant. If the crime of which the defendant is convicted can be legally carved out of the crime of which he is indicted, the verdict is not void. In all cases of murder, where the injury inflicted by the defendant is the mediate or immediate cause of the death, the jury would only be justified, under an indictment for murder, in finding the defendant guilty of murder in the first degree, murder in the second degree, or manslaughter.

In *People* v. *Adams*, where the defendant was indicted for murder, and convicted of assault and battery, the supreme court, upon appeal, said: "It is certainly a little singular that an assault which is followed by death as its result should be regarded as anything but homicide. If a crime at all, it must have been murder or manslaughter, and a verdict clearing a party from that guilt is not in accordance with common sense." (52 Mich. 25.) But let us suppose a case where the deceased is assaulted by the defendant with intent to kill him, and the

deceased dies within a year and a day, thereafter, and the defendant is indicted for the murder upon the theory of the prosecution, that the death was the result of the injuries inflicted by the assault; but upon the trial the evidence upon the part of the defendant shows, to the satisfaction of the jury, that the deceased did not die from the effects of the wound, but from other causes entirely independent of the effects of the assault. Would not the jury, in such a case, be authorized to find the defendant guilty of an assault with intent to kill? In such a case, would not the crime of an assault with intent to kill be necessarily included in the higher offense with which he was charged in the indictment? Should the defendant in such a case, after his conviction of the lesser crime, be discharged or held in the custody of the sheriff, to answer before another grand jury for the crime for which the jury, on his trial for murder, found he was guilty? Could not the defendant, if he was subsequently indicted for the lesser crime, plead that he had been placed in jeopardy for the same offense by his former trial upon the indictment for murder?

The questions involved in this proceeding have never been decided in this state, and it is only in rare and exceptional cases that they are liable to be raised. There are, however, cases in this and other states where analogous principles have been either decided or discussed which have a direct bearing—more or less—upon the subject. The principles involved are not, therefore, entirely new, novel, startling, or monstrous in their character.

In *State* v. *Robey*, the defendant was indicted for an assault with intent to murder, and was found guilty of "an assault with a deadly weapon, with intent to inflict bodily injury." The indictment charged that Robey, "without authority of law and with malice aforethought did shoot at William Newsom, with a shotgun loaded with powder and leaden bullets, with intent to kill him." It was claimed that the indictment would not sustain the verdict because it did not charge an intent to do bodily injury. This court, after reviewing several authorities, said: "After a careful consideration of this appeal we are of the opinion that the judgment is sustained alike by reason and authority. The defendant was fully informed by the indictment of the charge against him and of the means employed in committing it. He is accused of intent to murder by shoot-

ing; murder by shooting cannot be effected without bodily injury. The offense of which he was convicted is therefore necessarily embraced in the one charged. By the indictment he is charged with the particular act of which he was convicted, but in a higher grade of crime." (8 Nev. 321, and authorities cited.)

In *People* v. *Prague*, similar in all respects to the Robey case, recently decided by the supreme court of Michigan, the court said: " Where the offense embraces different degrees, and the highest degree is charged, it has been held that the person charged may be convicted of any of the lesser degrees. Thus, if charged with murder in the first degree, he may be convicted of murder in the second degree, or of manslaughter, or of assault and battery. *The reasons are that the offense springs from the same transaction, and is supported by the same class of testimony.*" (40 N. W. Rep. 243.) In *State* v. *Smith*, the court declined to pass upon the question whether a defendant could, in any case, under an indictment for murder, be convicted of a simple assault, as it was not involved in the case. It was, however, said that the only theory upon which defendant could have been acquitted of the homicide and convicted of assault " is that the wound inflicted was not the cause, mediate or immediate, of the death, a theory which derives no countenance from the testimony." (10 Nev. 124.)

In *Wilson* v. *State*, where it was held that the defendant could not, under the charge of murder, be convicted of " cruel and unusual treatment of a slave," the court said: "If a case shall arise in which a party has made an unlawful, felonious assault on another, inflicting a wound, and death follows the wounding, but from the evidence the jury are unable to say that the wounding caused the death, yet, if the evidence shall clearly satisfy them that the assault was made with the intent of taking life, a case may be presented authorizing the courts to punish for the assault with the intent to commit murder upon an indictment charging the commission of the offense. The record, however, does not present such a case, and its discussion would be premature at this time." (29 Tex. 245.) Bishop says that " if the indictment is for murder, the verdict, when the prisoner is found guilty, may be either for murder or manslaughter. If the indictment charges an assault, as most indictments for murder do, the verdict may even be for the simple assault, or for a simple as-

sault and battery, if the allegation includes also a battery, except where the common-law rule prevails, that there can be no conviction of a misdemeanor on an indictment for a felony." (2 Bish. Crim. Proc. Sec. 639.)

In *Com.* v. *Roby*, 12 Pick. 504, cited and relied on by petitioner, Chief Justice Shaw was of opinion that the rule of the common law, as stated in the last clause of the above section from Bishop, did not result from considerations peculiar to the administration of justice in England, " but from the broader consideration, that the offenses are, in legal contemplation, essentially distinct in their nature and character, and that this is manifest from an examination of the authorities." Entertaining this view, he held that " in no case could a party on trial for the one, be convicted for the other." There are many cases which declare that the reason upon which the qualification of the rule was founded was that, upon a trial for misdemeanor in England, the defendant had the privilege of making a defense by counsel, to have a copy of the charge against him, and a special jury, which were not allowed in cases of felony. In this country the rights of the defendant to a fair and impartial trial are as full and complete, and in some respects greater, on a trial for felony than in cases of misdemeanor. Hence, in many of the states, the qualification, stated by Bishop, has been departed from, upon the ground that, the reason for it ceasing, the qualification ceased with it. In other states the qualification has been abolished by statute. It has also been abolished in England. There are, however, a few states that still adhere to the old common-law rule upon the subject. Whatever the weight of authority may have been at the time the Roby case in Massachusetts was decided, in 1832, we are of opinion that the views expressed by Chief Justice Shaw are not sustained by the weight of the authorities as they exist at the present time. (*Hanna* v. *People*, 19 Mich. 318; *Stapp* v. *State*, 3 Tex. App. 144; 1 Bish. Crim. Law, Sec. 804 *et seq.*, and authorities there cited.) But, in any event, that question is not directly presented in this case, as the crime of which petitioner was convicted is of the same generic class as that charged in the indictment, to-wit, a felony.

In *Wright* v. *State*, the court said: "Assault and battery, which is simply a misdemeanor, is not included in any of the degrees of homicide. The misdemeanor is merged in the felony. The assault * * * which results in death, must be-

long either to felonious homicide embraced in murder or man-slaughter; or to justifiable or excusable homicide, as the execution of a felon by due course of law, or in a proper meas-ure of self-defense. In either event, the simple assault and battery no longer remains as such to be punished. It is either merged, justified or excused." (5 In l. 528.) But, it must be noticed that this Indiana case—like the case of *People* v. *Adams*, 52 Mich. 24, where it was held that an indictment charging murder, in the abbreviated statutory form, would not sustain a verdict for the offense of assault and battery—relates to that class of cases, to which we have heretofore referred, where death resulted from the injuries inflicted by the assault. It will, for this reason, readily be seen, as before stated, that the decisions in this class of cases have no application—certainly no binding force—to a case like the one we have supposed to exist, where the death of the deceased was not the mediate or immediate result of the assault, etc.

It has frequently been decided that a defendant indicted for rape may be found guilty of an assault with intent to commit rape, or a simple assault, upon the reason that these minor offenses were necessarily included in the crime of rape. The question, however, does not solely depend upon the averments in the indictment, but also upon the character of the evidence at the trial, as cases have arisen where the facts showed that the assault was not a necessary ingredient of the crime of rape, or attempted rape. (*State* v. *Pickett*, 11 Nev. 259.) The reason why a defendant indicted in the ordinary form, for murder, may be convicted of manslaughter is that, if the averment that the killing was with malice aforethought be negatived, or stricken from the indictment, there still remains a sufficient charge of manslaughter. To constitute the crime of an assault with intent to murder, every ingredient of murder must be present except the death of the party assaulted. In an indictment for murder it is not necessary that the assault with intent to kill should be expressly charged in formal words. It is sufficient, in the case we have supposed, if the murder charged necessarily includes the assault. In determining the question whether, under such an indictment, a verdict for the lower offense can be sustained, courts should look at the evi-dence submitted at the trial, as well as to the language of the charge contained in the indictment. It has been decided that

a defendant may be found guilty of murder in the first degree, upon the finding of the jury that he killed the deceased in the perpetration of robbery, or rape, etc., without any allegation of that fact in the indictment.

The indictment in the case of the *State* v. *Gray* simply charged that the defendant, " without authority of law and with malice aforethought, killed R. H. Scott, by shooting him with a shotgun." No question was raised in that case as to the sufficiency of the indictment; but the verdict, as well as certain instructions given by the court, was sustained upon the sole ground that the murder was committed by the defendant while attempting to commit a robbery. (19 Nev. 213.) In *State* v. *Johnson*, the indictment contained two counts, each alleging premeditation, deliberation and other necessary ingredients of murder in the first degree. There was no averment in either count that the murder was committed in the perpetration of a robbery. The trial court, as in the Gray case, instructed the jury that, if they found from the evidence that the killing was done in the perpetration of a robbery, it was murder in the first degree. Upon appeal it was argued that, in the absence of an allegation in the indictment that the killing was done in the perpetration of a robbery, the finding of such fact would not authorize a verdict for murder in the first degree. The supreme court said: " We are of a different opinion. The indictment sufficiently alleges that the killing amounted to murder in the first degree. It was not necessary to allege the facts and circumstances attending the crime. The indictment sufficiently supported the proof of facts which constituted the killing murder in the first degree, and under it proof was competent to show that the crime was committed in the perpetration of robbery." (72 Iowa, 400, see also, *Graves* v. *State*, 45 N. J. Law, 347; *Titus* v *State*, 49 N. J. Law, 39.) Now it being true that none of the rights or privileges of the defendant, guaranteed by the provisions of the constitution are violated, or any recognized rule of law disregarded, by convicting him of murder in the first degree upon proofs that the crime was committed in an attempt to commit robbery, under an indictment which described the crime in the abbreviated statutory form, how can it consistently be claimed that such rights and privileges are violated when he is convicted of a lesser offense, the ingredients of which are included in the charge of murder? If the indictment need not

in formal terms state the attempt to commit robbery in the one case, why should it be necessary to alllege the assault with intent to kill in the other? Is not the defendant, in either case, under an indictment in proper statutory form, "duly informed of the nature and cause of the accusation against him?" In *Graves* v. *State, supra,* the court said:. "When the legislature, commendably simplifying the form of the indictment, provided that in charging the crime it should not be necessary to set forth the manner in which or the means whereby the death was caused, but that it should be sufficient to charge that the defendant wilfully, feloniously and of his malice aforethought, killed and murdered the deceased, it merely provided that in a charge of murder, a crime well understood and defined in the law, it should be enough to charge the crime in language sufficient to designate it. It also provided that if the jury should find the accused guilty of murder, they should by their verdict say whether it was murder of the first or second degree. * * * The statute did not make murder of the first degree a separate and distinct crime from murder of the second, but murder of each grade, after the passage of the statute, continued to be, as it had theretofore been, the crime of murder. The indictment in the statutory form is for the crime of murder, without regard to the degree. Under such an indictment, the defendant is not only informed of the nature and cause of the accusation, but is apprised of what it is exactly. It is a charge of murder, and the cause the willful and felonious killing, by him, of the deceased, of his malice aforethought. The offense for which he is called to answer is charged in the indictment. It is murder. According as he shall or shall not be proved to have committed the crime of murder, he will be convicted or acquitted; and if convicted, according as it shall be proved that he committed it under circumstances which characterize the one degree or the other, so it will be found or adjudged with a view to his punishment, and he will be punished accordingly." (45 N. J. Law, 358.)

It was unnecessary, in the indictment for murder against petitioner, to allege an assault with intent to kill, in formal and express terms, but, under the averments in the indictment, all the facts and circumstances in relation to the shooting of the deceased could be given in evidence at the trial. The real questions, therefore, are, as before stated, (1) whether the

proofs upon the trial showed that there was an assault with intent to kill the deceased; and, (2) if there was such an assault, whether that offense is, upon the facts, necessarily included in the charge set out in the indictment.

Supposing, as we have, that the facts of the case tended to show that the death of Courtney was not in any manner to be attributed to the wound inflicted by the shooting, we proceed to consider the cases which are directly in point.

In *State* v. *Scott*, 24 Vt. 127, the evidence was considered insufficient to show that the death of the deceased resulted from the beating and wounding by Scott, but might have resulted from other causes. It was held that the defendant, who was indicted for manslaughter, might probably be convicted of assault and battery, although the indictment did not contain any count specially charging the less offense. In *Stapp* v. *State*, the defendant was indicted for the murder of one Finley, and upon the trial was convicted of an assault with intent to murder. The question whether such a conviction could be sustained was reviewed at considerable length. The court said : " After a careful examination and consideration of the briefs and oral argument of counsel, and the authorities cited, we believe that an indictment for murder includes an indictment for an assault with intent to murder." (3 Tex. App. 146.) This conclusion was partly arrived at by reason of the language used in paragraphs 6, 7, art. 3096, Pasch. Dig., which is as follows : " (6) Every offense against the person which includes within its assault with intent to commit said offense, when such assault is a violation of the penal law. (7) Every offense includes within it an attempt to commit the offense when such offense is made penal by law." These paragraphs do not, in our opinion, furnish any greater support for such a conviction than the provisions of our own statute, and all the reasoning of the court, and the facts of the case, are directly applicable to the questions we are considering and the case we are supposing. The question was raised by the evidence, at the trial, whether Finley died from the wounds inflicted by Stapp, or whether his death was to be attributed " entirely to engorgement of the lungs, produced by intoxication and exposure, and the antecedent predisposition to pneumonia." Upon this state of the testimony, under an indictment for murder by stabbing with a knife, the court charged the jury " that if they acquitted the

defendant of the three degrees of homicide—murder in the first degree, in the second degree, and manslaughter—that then they could consider whether the defendant was guilty of assault to murder." After a definition of the several degrees of homicide the court further charged the jury as follows: "Should you not believe beyond a reasonable doubt that the defendant is guilty of either murder in the first or the second degree, or of manslaughter, but should you believe, beyond such a reasonable doubt, that he is guilty of an assault with intent to murder, you should so find." The court, after declaring that the allegations in the indictment were sufficiently comprehensive to charge an assault with intent to murder, said: "In the case at bar the injury appears to have been inflicted with deliberate design, and in a vital part, with a knife, charged to be a deadly weapon, in a manner and under circumstances [as the jury doubtless concluded] well calculated to induce the belief that the accused intended to take life, and without any extenuating circumstances. We think that the charge of the court upon the offense of an assault with intent to murder was sufficiently specific. Taking the charge as a whole, it was a clear and able exposition of the law applicable to the case, and was not calculated to mislead the jury. The verdict of the jury was fully authorized by the evidence. * * If the defendant was surprised by the charge of the court, we cannot relieve him. He was called upon by the indictment to meet every offense included in it. If the interpretation given to the statute, both by the district court and this court, is ' an interpretation against public policy,' the legislative department of the government is the one to go to to have the evil corrected." The legislature, desiring to place this question beyond all cavil, subsequently amended the statute by providing, in express terms. that murder includes assault with intent to murder, and that assaults with intent to commit any felony include all assaults of an inferior degree. (Code Crim. Proc. Tex. Art. 714).

In *Bean* v. *State*, the indictment charged the defendant with murder in the second degree, and he was convicted of an "aggravated assault and battery," and, notwithstanding the express provisions of the code, it was contended by counsel that the conviction could not be sustained because the essential elements of the latter offense were not set out nor embraced in

the charge in the indictment. The court, in reviewing this question, said: "Independently of this article 714, we are further of opinion that the indictment in this case is sufficient, even in setting forth the offense of an aggravated assault and battery, under the seventh subdivision of article 488 of the Penal Code, which makes an assault aggravated 'when a serious bodily injury is inflicted upon the person assaulted.' Now, the indictment charges that the appellant killed and murdered the deceased, by 'striking, beating, bruising and wounding him with a stick.' It is clear that he could not have done this without inflicting bodily injury upon him. It is true, the exact statutory words which we have quoted are not used in the indictment, but the substituted words are, if not equivalent, certainly of more extensive signification than the statutory words, and this is all that is required." (25 Tex. App. 355.)

In *Davis* v. *State* the defendant was indicted for murder, charged to have been committed by shooting the deceased with a gun, and was convicted of an assault with intent to kill. The statute of Arkansas is not essentially different in substance from the statute of our state. The court, upon the questions applicable to this case, said. "An assault with intent to kill, though a felony by our law, is not one of the degrees of homicide; but it is an attempt to commit murder, and is virtually included in every murder that is committed by violence. All the elements of murder, except the actual killing, must conspire to constitute the crime. * * * We, therefore, conclude that, following the analogies of the previous decisions of this court, reinforced, as they are, by direct provisions of the criminal code, if the proof fails to establish all the allegations of the indictment, so as to warrant a conviction of the offense presented, but at the same time shows the defendant is guilty of a substantial crime, necessarily contained in the terms of the indictment, he may be found guilty of the minor offense. Cases may readily be supposed where any other rule would operate to defeat justice; as, if the proof should show that the person alleged to have been murdered was not in reality dead, or that he died after the lapse of more than a year and a day, or from other causes than the wounds inflicted by the accused. * * * The present indictment is in the abbreviated code form, and does not in terms charge an assault upon the person of Adams, as the common-law form does. Yet, as it sufficiently charges

murder in the second degree, and as the offense for which the prisoner was convicted is necessarily included in that charged, it may suffice for the purpose, though there be no words specifically designating the offense so included " (45 Ark. 469.)

In *Smith* v. *State*, the defendant was indicted, with two other persons, for the murder of S. B. Canthron. The indictment, as in this case, charged that the offense was committed by shooting the deceased with a gun. There was testimony tending to show that Canthron may have died from the effects of pneumonia instead of from the wound. There was also testimony tending to show that the wound inflicted by the defendant was likely to bruise the lung and cause pneumonia. The defendant was convicted of murder in the first degree. Upon appeal he claimed that the court erred in refusing to give the following instruction: " If the jury believe from the evidence, beyond a reasonable doubt, that the defendant participated in the shooting of deceased, but fail to find that death resulted from said wound, they may find defendant guilty of an assault with intent to kill, but not of murder or manslaughter." The court said: " It is most probable from the testimony that Canthron died from pneumonia or congestion of the lung caused by the wound inflicted by the appellant, or so aggravated by it as to hasten death. In either event, the wound should be regarded as the juridical cause of death, and the prisoner held to the consequences. * * * But, in determining whether the court ought or ought not to have instructed the jury on the question of a lower offense included in the greater charge, we look to the record only to see if there is any testimony to base it on. (*Fagg* v. *State*, 50 Ark. 506.) We do not stop to weigh it, and thus try to ascertain what effect, if any, it might have had with the jury. Where the defendant is shown to have inflicted a malicious wound, and the proof shows that death ensues from it, and he seeks to evade the consequences by showing that his act was not the cause, nor the cause of the cause, of death, the evidence should be very plain to warrant the jury in agreeing to his version. But, if there is any evidence to sustain his theory, it must be submitted to the jury under proper instructions from the court. The court has no discretion to withhold instructions appropriate to any theory of the cause sustained by competent evidence. * * * For the error indicated, the judgment is reversed." (50 Ark. 549.)

In *State* v. *Parker*, the court said: "It is urged by counsel for defendant that the verdict of guilty of an assault with an intent to commit a great bodily injury, upon the indictment for murder, is unauthorized by law. Code, Sec. 4466, provides that 'the defendant may be found guilty of an offense, the commission of which is necessarily included in that with which he is charged in the indictment.' It cannot be doubted that an assault is included in the crime of murder. Usually an indictment, in express words, charges an assault with felonious intent. Of necessity, an assault must have been literally committed in all cases of murder by direct violence. The intent with which the assault is committed relates to its character, and indicates its degree. It is discovered, not in the extent or nature of the violence, but in the *animus* of the perpetrator. It follows that an assault, whether with an intent to murder, to maim, or to inflict a great bodily injury, is included in the crime of murder. It is the settled doctrine of the law in this state that an assault is included in the crime of murder; the intent with which the assault is committed does not exclude it. This case illustrates the reasonableness of the rule we recognize. The indictment alleges assault upon the deceased, who was a child, the failure and refusal of defendant to furnish him with medical treatment and care, and the compelling of the child to work while wounded and bruised. Now, if the jury found that death resulted, not from the assaults and treatment received from defendant, but from disease, and also found that defendant did assault the child with intent to inflict a great bodily injury, their verdict is authorized by the law, the assault being included in the charge of murder." (66 Iowa, 589.)

From this review of the authorities it seems to us perfectly clear that petitioner should not be either discharged, or remanded to the custody of the sheriff of Eureka county. Petitioner is remanded to the custody of the warden of the state prison.