# STATE v. VANCE.

No. 2248.   Decided November 16, 1911 (119 Pac. 309).

1. HOMICIDE—INSTRUCTIONS—EVIDENCE—OBJECTIONS.   A conviction for assault with intent to murder under an information charging murder will not be set aside on the ground that the court erred in submitting the issue of murder because of insufficiency of the evidence to present the question.   (Page 605.)

2. INDICTMENT AND INFORMATION—CONVICTION OF OFFENSES INCLUDED IN OFFENSES CHARGED.   Under Comp. Laws 1907, sec. 4893, authorizing the jury to find accused guilty of any offense the commission of which is necessarily included in the offense charged, or of an attempt to commit the offense, one charged with murder by the combined effects of kicking, beating, and bruising decedent, and from the administration of poison, may be convicted of assault with intent to murder, though in a charge of murder by poison without violence an assault is not included.   (Page 605.)

3. CRIMINAL LAW—LAW OF THE CASE.   A decision of the Supreme Court on appeal in a criminal case is the law of the case on a subsequent trial.   (Page 608.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Thomas Vance was convicted of assault with intent to murder and he appeals.

AFFIRMED.

*J. F. Tobin, F. T. McGurrin, A. J. Weber* and S. A. *Maginnis* for appellant.

*A. R. Barnes,* Attorney General, for the State.

FRICK, C. J.

Appellant was charged with the crime of murder in the first degree, and upon a trial the jury found him guilty of "an assault with intent to murder." Judgment was duly entered upon the verdict, and the appellant asks us to re-

verse the judgment upon the following assignments of error:
(1) That the court erred in refusing the request of appellant
to direct a verdict of not guilty; (2) that the verdict "is
against the evidence;" (3) that "the verdict of the jury is
contrary to law;" and (4) that the court erred in submitting
the case to the jury upon the charge of murder "because
there was insufficient evidence in the case to present that
question to the jury."

This is the second appeal of this case. Our opinion on
the former appeal is found in 38 Utah, 1, 110 Pac. 434. The
information filed against the appellant is set forth in our
first opinion. Barring the fact that appellant's children
who testified against him at the former trial changed their
testimony at the present one, and testified that their former
testimony with respect to what they said about appellant
kicking and beating their mother was not true, the evidence
upon the part of the state at the last trial, with unimportant
exceptions, was substantially the same as upon the former one.
For this reason we shall not refer to the evidence in detail,
but refer to the opinion aforesaid for a complete statement
of facts.

As appears from our first opinion in this case, the infor-
mation contained three counts. The state elected to try the
appellant upon the third count, in which it was, in sub-
stance, charged that he on the 26th day of November, 1907,
did make an assault upon one Mary Vance, and he did then
and there "wilfully, unlawfully, deliberately, premeditatedly,
feloniously, and of his malice aforethought, and with the
specific intent to take the life of the said Mary Vance,"
strike, kick, beat, and bruise her, and that on the 27th day
of November appellant "wilfully, unlawfully, deliberately,
premeditatedly, feloniously, and of his malice aforethought,
and with the specific intent to take the life of the said Mary
Vance," did mix and mingle a fatal quantity of a deadly
poison with a certain quantity of water which the said Mary
Vance was then and there about to drink, and did drink, and
that by reason of "the striking, kicking, beating, and bruising
of the said Mary Vance by the said Thomas Vance as afore-

said, and the drinking of the water and poison as aforesaid, the said Mary Vance became mortally sick and distempered in her body, and the said Mary Vance of the beating, kicking, and bruising aforesaid, and of the poison aforesaid so by her taken, drank, and swallowed as aforesaid, and of the mortal sickness and distemper occasioned thereby, from the 27th day of November, A. D. 1907, until the 8th day of December, 1907, continually languished, and so languishing on the 8th day of December, 1907,   . . .   of said mortal sickness occasioned by the said beating, kicking, bruising and poisoning aforesaid died, and so the said Thomas Vance the said Mary Vance, in the manner and form aforesaid, wilfully . . .   did kill and murder." On the former appeal we held that in the third count upon which the appellant was tried he was charged with causing the death of his wife by a combination of two causes operating jointly. In other words, that the means described in the information which, it was alleged, produced death was the effects of the kicking, beating, and bruising inflicted upon the body of the deceased on the 26th day of November, and that such effects, operating in conjunction with the effects of the poison which it was alleged appellant administered to her on the following day, and nothing else, caused her death. Under the foregoing charge, we accordingly held that, in order to find the appellant guilty of murder, the jury had to find that both causes operated together to produce death, and that the court erred in charging the jury that they could find the appellant guilty of murder, although they found that the deceased died from the effects of the kicking and beating alone, or from the effects of the poison alone. We also held that, for the reasons just stated, the third count charged but one offense.

We will now proceed to consider the assignments of error. In answer to the first assignment, it is sufficient to say that for the reasons hereafter appearing the court did not err in refusing to take the case from the jury upon appellant's request.

The fourth assignment is sufficiently answered by the verdict of the jury. In view that the jury failed to find the ap-

pellant guilty of murder, they must have found that the
evidence in their judgment was insufficient to sustain that
charge.    The only other assignment is to the effect that the
verdict and judgment are contrary to law.    As al-
ready stated, the jury found the appellant guilty of
having assaulted the deceased with the intent to
murder her.    No exception was taken to the court's charge
in which the jury were directed that, under the information
they might find the appellant guilty of an assault as afore-
said, if the evidence warranted such a finding beyond a rea-
sonable doubt.    For the purposes of this decision, we shall
assume that the question now to be considered is properly
presented for review, either under the first or the third as-
signment or under both.

Upon the question raised by the foregoing assignments,
we think,    that the provisions of Comp. Laws 1907, sec-
tion 4893, are material. That section reads as fol-
lows: "The jury may find the defendant guilty of
any offense, the commission of which is necessarily
included in that with which he is charged in the indictment,
or of an attempt to commit the offense."

Notwithstanding the foregoing provision, counsel for ap-
pellant strenuously argue that the offense of which appel-
lant was found guilty by the jury is not included within the
offense with which he was charged in the third count of the
information, the material parts of which we have already
set forth.    This squarely presents the question of what of-
fense, if any, is necessarily included within the charge of
murder as contained in the third count of the information.
As we understand counsel for appellant, they contend that,
if the appellant had been charged with having committed
the alleged murder by kicking, beating, and bruising alone,
then an assault with intent to murder might be said to be
included within the charge, but, inasmuch as appellant stands
charged with having committed the murder by the combined
effects of the kicking, beating, and bruising and from the ad-
ministration of poison, therefore an assault with intent to
murder is not included.    This conclusion is based upon two

grounds: (1) That in the charge of murder by the administration of poison without violence no assault is present; and (2) that inasmuch as it is charged that death was caused by a combination of two causes, in one of which there was no violence, therefore the two causes did not combine in the assault, and, unless they did so, the assault which is a part of the offense of which appellant is found guilty cannot legally be included in the charge contained in the third count of the information. We are unable to grasp the logic of this contention. Even though it be conceded that in a charge of murder by poison without violence an assault is not included, yet in a charge of violently kicking, beating, and bruising another an assault is necessarily included. It is true that it was charged that the alleged murder was committed, or that death was caused by the combined effects of two distinct causes, but it is also true that the jury in their verdict must also have found that the death did not ensue from the combined effect of those causes, and hence that the acts of appellant did not cause death at all, but that the deceased died from some other cause or causes. The appellant was thus found not guilty of murder, but was found guilty of having assaulted the deceased with the intent to murder her. In being charged with an assault, and kicking, beating, and bruising the deceased, the appellant certainly was charged with having committed a violent assault upon her person. No one can successfully dispute this. Moreover, the evidence in support of that charge practically stands undisputed. What difference there is between the witnesses upon this point merely relates to the extent of the violence used by the appellant, and to the seriousness of the injuries that he inflicted upon the person of the deceased. In view of this, how can it be seriously contended that the offense of an assault with intent to murder was not included in the third count of the information? The fact that it was necessary for the jury to find that it was the combined effect of the kicking, beating, and bruising and the poison that caused death before the appellant could be found guilty of murder has nothing to do with the lesser offense of an assault with intent to murder. The com-

bination of the foregoing causes had to be found to exist and co-operate before the appellant could be found guilty of murder because it was charged that he committed the murder by the use of those means and by no other.

But, when the jury repudiated the charge of murder, then the only question left was whether an assault with intent to commit murder could legally be carved out of the principal offense charged, which was murder. We think that all of the authorities agree that where violence is a necessary ingredient in committing the offense, and is contained in the charge of murder, then the lesser offense, namely, an assault with intent to murder, is necessarily included in the principal charge—that of murder. To say that in this case the lesser offense would have been included if the appellant had been charged with murder by kicking and bruising and beating the deceased, but that it is not included because it was also charged that something else had combined and co-operated with the foregoing in producing death, therefore it is no longer included, is to say that the lessor is not included within the greater. This, to our minds, is no more logical in law than it is in physics. The violent assault which it is alleged appellant made upon the deceased is just as much a part of the charge of murder after he is charged with the administration of poison as it was before the latter charge was added to the former. If this be so, then the assault with intent to murder must be included within the principal charge. The jury were thus authorized to find that, while the evidence fell short of establishing the fact that the appellant had administered any poison to the deceased, and that she died from the combined effects of the poison and the kicking, beating, and bruising yet that they from the evidence were satisfied beyond a reasonable doubt that appellant had kicked, beat, and bruised the deceased, and that he had done so with the intent of killing her. The jury may thus have found that he failed to accomplish his purpose but that he nevertheless made an assault upon the deceased with the specific intent to kill her.

It seems to us that the authorities under statutory provisions like ours leave little, if any, room for doubt that the

offense of which the appellant was convicted is legally included within the charge contained in the third count of the information. In the case of *Ex parte Curnow,* 21 Nev. 33, 24 Pac. 430, Mr. Justice Hawley reviews the subject, and in his characteristic lucid style shows that an assault with intent to commit murder is necessarily included within the principal charge of murder in case that acts of violence are included within the charge. The same conclusion is reached by the Supreme Court of Iowa in the case of *State v. Parker,* 66 Iowa, 589, 24 N. W. 225. To the same effect are the cases of *Thomas v. State,* 125 Ala. 45, 27 South. 920; *Peterson v. State,* 12 Tex. App. 655; *Davis v. State,* 45 Ark. 464; *Bush v. Comonwealth,* 78 Ky. 268, and other cases that it is unnecessary to cite. Under a statute like ours, we have been unable to find a well-considered case that holds to the contrary.

The contention that the third count of the information contained two distinct offenses was passed on in the former opinion adversely to appellant's contention, and hence is the law of the case. In any event, however, there is in our judgment no merit to this contention.

We have carefully examined the cases cited by counsel for appellant, and in doing so have been forced to the conclusion that they have no application to the case at bar.

The judgment is affirmed, with costs.

McCARTY, J., concurs.

STRAUP, J. (concurring).

It is with some reluctance that I concur in the result affirming the judgment. As has been stated, the defendant was charged with assaulting and beating the deceased on the 26th day of November by striking her with his clenched fists and by kicking her, and on the 27th day of the same month with administering to her a deadly poison, and that she from the combined effects of both causes died on the 8th day of December. The court instructed the jury that the defendant could not be found guilty of murder unless they found that the

death was the result of a combination of both causes. The court further charged that the offenses of an assault with intent to commit murder, assault and battery, and simple assault, were offenses necessarily included in the charged offense of first-degree murder, and that the defendant could under the information be convicted of any one of them. The jury convicted the defendant of an assault with intent to commit murder. He now contends, not that the offense of an assault with intent to commit murder is not necessarily included in some charged offenses of first degree murder, but that it is not included in the particular charged offense of first-degree murder. This contention is based on the theory that in a charged offense of murder by poisoning alone the offense of an assault with an intent to commit murder is not included.

There are very respectable courts which so hold. Then it is argued that, since an assault with intent to commit murder is not included in a charged offense of murder by poisoning, the former offense is also not included in a charged offense of murder where, as here, poisoning is alleged as an essential of the charged offense of murder, even though it is not alleged as a sole but a co-operating cause of the death. Hence it is claimed that the court erred in charging the jury that the defendant could under the information be convicted of an assault with intent to murder.

It is alleged that the defendant on a day named unlawfully, willfully, premeditatedly, feloniously, and of his malice aforethought did strike, beat, and kick the deceased with the specific intent to take her life; that on the next day he willfully, etc., administered to her a deadly poison; and that from both causes she died. Now, the question here is not so much whether an assault with an intent to commit murder is, generally speaking, necessarily included in a charged offense of first-degree murder, but whether it necessarily is included within the direct and specific averments set forth in the information. When that portion of the information charging a willful, etc., beating, with malice aforethought, and with an

39 Utah—39

intent to take the life of the deceased, is looked to, I am readily persuaded that the offense of an assault with intent to murder is necessarily included within those averments.

There is, however, another assignment which in my judgment presents a more difficult question—insufficiency of the evidence to sustain the verdict. In many particulars the evidence on this trial is similar to that on the first trial. That is especially true in respect of the general surroundings of the case. The evidence that the defendant administered poison to the deceased, or that she died of mercurial poisoning, the only poison claimed by the state that the defendant administered to her, is not even as strong on this as it was on the former trial. The evidence, however, I think, indisputably shows that the deceased died from some kind of poisoning. That, I think, is clearly shown by the described symptons of the deceased's ailment, the character of her complaints and sufferings, and by the irritated, inflamed, and congested condition of the membranes of the stomach and intestines of the deceased as disclosed by the autopsy, and as testified to by the physicians and chemists. The state contended that the defendant administered to the deceased bichloride of mercury in water, and that that, together with his beating her on the previous day, was the cause of her death. The defendant contended that she died from an overdose of oil of savin taken by her to relieve a suppressed menstruation. As testified to by the experts both bichloride of mercury and oil of savin are irritant poisons. From an autopsy and a chemical analysis of portions of the deceased's internal organs no trace of mercury was found. The described ailments and suffering of the deceased, and the congested and irritated condition of her internal organs, are, as testified to by all the physicians, as readily traceable to a poison of oil of savin as bichloride of mercury. Even the experts for the state would not venture an opinion that the congested and irritated condition of the deceased's organs was due to mercurial poisoning, or that she died from such a cause. All that they testified to in that regard was that bicholoride of mercury would produce the conditions found by them; but they also testified that an overdose of oil of

savin would produce the same conditions. And there was as much, if not more, evidence tending to show that the deceased herself took an overdose of oil of savin, as that the defendant administered to her bichloride of mercury. But I need not go into details of that, for the jury evidently were satisfied that the evidence was not sufficient to justify them in finding that the defendant administered to the deceased bichloride of mercury, or that she died from such a cause. I have referred to the matter only for the purpose of showing that the deceased died from some kind of poisoning. The jury, evidently reaching the conclusion that the evidence would not justify them in finding that the defendant administered poison to the deceased, naturally turned to a consideration of the further question of an assault with an intent to kill. And the determination of the question of whether the verdict rendered by them is supported by the evidence involves a review of the evidence with respect to the beating and kicking of the deceased by the defendant on the 26th day of November.

The most important evidence on that question is the dying declaration of the deceased, made but a short time before dissolution, and while she was very weak, and made in the presence of the county attorney and a deputy sheriff in response to questions propounded to her, and subsequently reduced to writing and signed by her. The language in the statement was not her language, but that of the county attorney in propounding questions to her, and to which she made responses yes or no. The statement signed by her is that: The "said Thomas Vance did on the 26th day of November, 1907, sit down to a meal, and, seeing that his coffee was filled too full, addressed this affiant as follows: 'God damn you, I'll bust your head with this. I'll learn you to pour me so much coffee.' And said Thomas Vance then and there threw said coffee and the cup holding the same at this affiant. That said cup did not strike this affiant, whereupon said affiant (defendant) seized this affiant, and began violently to beat her upon the head with his fists, knocking her to the floor. That she thereupon arose, started for the door, but that the said Thomas Vance again seized her, and then and there said

to this affiant, 'Now, God damn you, I'll kill you this time,' whereupon said Thomas Vance shook this affiant by the neck in a violent manner, causing her body to strike the stove, and he then and there slammed her body against the floor repeatedly, thereby causing affiant to lose consciousness. That the following named children of this affiant and said Thomas Vance were present while said Thomas Vance was beating this affiant as aforesaid, to wit: Lena Vance, Edward Vance, Florence Vance, and Albert Vance."

An Assyrian woman, an itinerant peddler, testified that she, while peddling on the 26th day of November, called at the back door of the deceased and the defendant's house, and rapped at the door. The door was partly opened, and she then saw the deceased lying on the floor near the stove, and that the deceased spoke to her something like "police" or "please police," that the defendant stood near the deceased and kicked her once, and then slammed the door shut. She did not state with what force or violence the defendant kicked the deceased, nor was she able to state with any certainty upon what portion of the body the deceased was kicked.

Another witness, a neighbor of the deceased, testified that she saw the deceased come out of the house, and that she told the witness to telephone for the police. When asked what for, she said "that brute which I call my husband is killing me," and that then "she tried to go in the door. It slammed, and she had to force her way in," where the defendant was, and from whence she had just come.

The two oldest children of the defendant, about twelve and eight years of age at the time of the alleged assault, and about fourteen and ten at the time of the trial, testified that their parents on the 26th day of November had some trouble at the dinner table. When the deceased brought the defendant coffee, he asked her not to fill the cup. She did not hear him, and brought the cup too full. He said: "Didn't I tell you not to fill my cup full?" She said: "I didn't hear you." He: "You better say you did." She: "Well, I won't do it, for I never heard you." Then he jumped up, and threw the coffee at her, and then the cup, but did not hit her with it.

Then he picked up a chair. She said: "Tom, don't you hit me with that. You set it down." He set the chair down, and then ran to her and shoved her down near the stove. She jumped up and ran out of doors on the back porch. He tried to shut her out, but she got back in before he could get the door closed, and that was all that happened. They further testified that the defendant did not kick nor strike her, but that he took hold of her and threw or shoved her to the floor, and that he made no threat to kill her. These children on the former trial testified that the defendant struck the deceased with his fists, that he kicked her, and one of them, that he said, "God damn you, I'll kill you;" but much evidence was adduced, and some by wholly disinterested witnesses, to show that the testimony of the children on the former trial was induced and influenced by a sister of the deceased, in whose charge they were most of the time from the death of the deceased to the time of the first trial, and that she coached them and rehearsed their testimony, and told them that, if they would not testify as directed, they, too, like their father, would be imprisoned. That sister was a witness for the state, and hostile to the defendant. She was thoroughly impeached. The testimony of the children on the former trial, of course, was not evidence on this trial to establish the facts so formerly testified to by them. It was evidence only affecting their credibility and the weight of their testimony with respect to the facts testified to by them on this trial.

The evidence, without dispute, shows that there were no marks, nor bruises, nor wounds found on the deceased's body, and that there were no external or internal indications that any violence had been committed upon her except the testimony of the sister, who testified that on the 27th she saw a black place swollen up under the right thigh of the deceased, about even with the lower portion of the vagina, and the attending physician who testified that some time after the deceased was removed to the hospital he found a black and blue mark—a discoloration of the skin—on the upper part of the inside right thigh. But the physician also testified that the discoloration was not indicative of any serious injury,

and that, as testified to by all other physicians, the death was not due to violence, and could not be attributed to such a cause. Other physicians, the undertakers, and other witnesses who had carefully examined the body at the morgue with a view of ascertaining whether any violence had been committed on the deceased, testified that they did not even find the black and blue mark testified to by the sister and the attending physician.

The evidence undoubtedly shows that the defendant committed an assault and battery on the deceased. Of course, an assault with intent to kill may be inferred from the character and degree of violence of an assault, though unaccompanied by threats. But, to justify the inference, the natural and probable consequences of the committed acts of the assault must be such as to cause death or do great bodily harm. That is to say, the inference would not be justified from a mere slap of the hand, or ordinarily from striking with the clenched fist, nor even from a kick, unless the circumstances and the degree of violence attending it are such as to show that the committed act naturally and probably tended to cause, or was intended to produce, great bodily harm. When the evidence independently of the dying declaration is considered, it is very doubtful if there is sufficient evidence to show that the defendant assaulted the deceased with intent to kill her. When so considered, the only evidence to show the assault is the testimony of the peddler that the defendant kicked the deceased once while she lay on the floor, of the children that he in a quarrel took hold of her and shoved or threw her down, but that he neither struck nor kicked her, and the fact that a black and blue mark was found on the upper part of the inside of the thigh of the deceased. Of course, it shows the defendant to be a bad man, and guilty of cruelty and battery. That a jury, however, from such acts alone may also infer an intent to kill, I think is very doubtful. From the statements contained in the dying declaration that the defendant violently beat the deceased on the head with his fist, that he knocked her down, that, when she arose, he seized, and violently threw her against the stove,

and slammed her body repeatedly on the floor with such violence that she lost consciousness, and that the committed acts were accompanied with a threat to kill, I think an intent to kill may be inferred. But it should be remembered that by an unbroken line of authorities dying declarations are receivable in evidence only in cases of homicide and where the death of the declarant is the subject of the charge of homicide and the circumstances of his death are the subjects of the declaration. Now, the dying declaration of the decedent was properly admitted in evidence, for, under the charge in the information, the death of the declarant and the circumstances and the cause thereof were the subjects of the charge of homicide; and it was receivable and applicable to the prosecution for homicide in whatever degree, first or second degree murder, or manslaughter. Query: Was it also applicable to the prosecution of an offense not amounting to homicide, an assault, an assault and battery, or assault with intent to kill? Clearly, under the authorities, had the defendant been charged with only the offense of an assault with intent to murder, the dying declaration of the deceased would not have been applicable to that kind of a prosecution, and would in such case have been inadmissible. Now, the jury, upon all the evidence adduced, including the dying declaration, finding that the alleged cause of the death was not sustained, and finding the defendant not guilty of homicide in any degree or of any kind, could they then consider the dying declaration applicable to the prosecution or charge of an assault with intent to murder? If so, then why would not dying declarations be receivable and applicable in a prosecution where an assault with intent to murder, with its included lesser offenses, was the sole charge? It is just as probable that the jury, undirected as they were, considered the dying declaration applicable to the included offense of an assault with intent to kill as to the charged offense of homicide, or any included offense of homicide. And I am inclined to think, unless warned or directed not to do so, they had the right to so consider it, or, more properly speaking perhaps, the aggrieved party could not complain if it was so considered, he not hav-

ing requested that the consideration of the evidence should
be restricted or limited to the charged or an included offense
of homicide, and to the cause of the death of him who was
the subject of the charge of homicide; for the rule is well
settled that if evidence is properly admissible for one pur-
pose, but may be improperly applied by the jury for another,
the party who may be aggrieved by such misapplication
should seasonably request the court to direct the jury to
properly restrict it. This the defendant did not do. So,
even though it should be held that the dying declaration
should have been restricted to a consideration of the charged
or an included offense of homicide, and to the cause of the
death of the declarant who was the subject of the charge of
the homicide, and should not have been considered by the
jury as applicable to the offense of an assault with intent to
kill or any lesser offense, still, the evidence being let to the
jury without objection and without request that a considera-
tion of it be restricted, I am inclined to the opinion that I,
on a review of the evidence to determine its sufficiency to
support the verdict, should consider it as it was so let to the
jury. I am not disposed on a review of sufficiency of evi-
dence to support a verdict to determine that question from a
consideration of evidence only which I think was properly
admitted or which only should have been considered by the
jury, and discard the rest in the absence of an exception and
assignment challenging the ruling which let the improper
evidence in or misdirected the jury in the application of it.
Hence, when the whole of the evidence, including the dying
declaration, is considered, I am of the opinion that the evi-
dence is sufficient to support the verdict. True, the state-
ments of the deceased were somewhat weakened because made
at a time when she was very feeble and could only with
difficulty respond to questions propounded to her, and because
there were no marks or bruises or wounds found on her body,
except the black and blue mark on her thigh, and no other
external or internal indications that any violence had been
committed on her. It may be said with considerable force,
that, if the violence had been inflicted on her head and body

as described by her, some marks or bruises or wounds other than that found on the thigh would have been found. But I think these were matters for the consideration of the jury. It was within their province to determine the truth of the statements contained in the dying declaration and the weight to be given them. They evidently believed the statements to be true, and I am not prepared to say that they had not the right to so believe and to find the facts as therein stated.

I therefore concur.