RONALD DURANE ALLEN, APPELLANT, v. THE
STATE OF NEVADA, RESPONDENT.

No. 11961

August 31, 1981                              632 P.2d 1153

---

[6]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE JOHN MOWBRAY, who voluntarily disqualified himself in this case. Nev. Const. art. 6, § 19; SCR 10.

*Morgan D. Harris,* Public Defender, and *Peter J. Christiansen,* Deputy Public Defender, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; and *Robert J. Miller,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, YOUNG, D. J.[1]:

This is an appeal from the judgment of conviction of the defendant. Mr. Allen was adjudged guilty of second degree murder and was sentenced to the Nevada State Prison.

Defendant has raised several issues on appeal, the principal issue being that the trial court erred in not instructing the jury on self-defense. We agree and reverse the judgment solely on that issue and for that reason have not discussed the other issues raised by appellant.

The facts of this case show that at about 11:00 p.m. on May 29, 1978, an argument started between defendant-appellant,

---

[1]The Governor designated the Honorable Lewellyn A. Young, Judge of the Sixth Judicial District Court, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice. Nev. Const., art. 6, § 4.

Ronald Durane Allen, a resident of the Evergreen Apartments, and his next-door neighbor, Sharon Diane Williams. As the argument grew more heated, the crowd in front of the apartments occupied by Allen and Williams grew and included, among others, Raymond Williams, Sharon's husband; Carrie Morris, Allen's housemate; Dorothy Lee Cooper, a neighbor; Vance Shelton, a friend of Williams; and Robert Duane Williams, the victim and Raymond Williams' brother.

As the argument grew to a climax, Allen went into his apartment and returned to the crowd. Thereafter blows were exchanged between Sharon Williams, Allen and Raymond Williams. Allen testified that Sharon slapped him first and he returned the blow, after which Raymond Williams began punching him. This testimony was refuted by the Williamses. After the fight began, Robert Duane Williams jumped or slid off the car on which he was sitting, the car being parked immediately in front of the apartment building. Thereafter the testimony again becomes confused and conflicting.

Several witnesses, *i.e.,* Sharon Williams and Raymond Williams, testified that after the fight began, Wayne, the victim, just slid off the car onto the ground without interfering in any way with defendant. Several other witnesses testified differently.[2]

---

[2]Vance Shelton on direct examination by the state testified (Trial Transcript, Page 146, Line 25 to Page 147 through Line 5):

"Q  What happened then?

"A  Well, about that time Ronnie's wife came outside. And her and Diane switched words. That's when Ronnie took his wife inside the house. He stayed in about a minute and a half, and then he come back outside. He said that he wasn't going to argue no more. And he went over to Diane and swung at her. I don't know if he hit her or not.

"That's when Wayne went toward Ronnie. He went to push him back. Ronnie stepped back, and at the same time he went to his side and he pulled something, like he was going up to hit him, but that's when Wayne jumped off his car on Ronnie's shoulders, and Ronnie's arm went back like this and that's when the gun went off."

Vance Shelton on cross-examination testified (Page 152, Line 10 to Page 153 through Line 17):

"Q  Then the other boy, you saw him jump on the top of Mr. Allen, didn't you?

"A  Yes, sir.

"Q  Did he grab him by both arms, or how did he grab him?

"A  He grabbed him around his shoulders.

"Q  And that was right after the blow was struck; is that right?

"A  Yes.

"Q  And at that time there was nothing in Mr. Allen's hand, was there?

"A  No, there wasn't.

"Q  And after he grabbed him, then the next thing you heard was what?

Review of the pertinent portions of the testimony indicates that the evidence was in conflict as to who was the actual aggressor and what the victim actually did to the defendant. The jury could have found from the evidence that the victim jumped on the defendant's back and that the defendant

"A    A gunshot.
"Q    Where did it come from?
"A    It came from between Ronnie and Wayne.
"Q    You don't think he intended to shoot?
"A    No, he didn't.
"Q    He didn't intend to shoot?
"A    He wasn't even facing Wayne at the time.
"Q    He wasn't even facing him when the shot went off, was he?
"A    No, he wasn't.
"Q    Do you think there was a struggle over the gun?
"A    No, there wasn't. He had complete control over the gun.
"Q    But this other man had him by the arms?
"A    Yes. Well, when he went into his pocket, he pulled out the gun at this angle. And when Wayne grabbed him, that forced his arms to be like this. Wayne had him like this around the shoulders, at the top of the shoulders. And evidently his arm had to go up, because Wayne's chest was right here at his shoulderblade. To be at that angle, I don't know how the gun went off.
"Q    In other words, the man that was shot was behind this man; is that right?
"A    Yes.
"Q    And he got shot from behind?
"A    Yes."

Holie Braudis on direct examination by the state testified (Page 174, Line 21 through Line 30):

"Q    What did Mr. Allen say to you at that time?
"A    Well, at that time he told me that some fellows jumped on him, and they had a knife and he had to shoot him.
"Q    Did he tell you what he shot him with?
"A    Yes. I asked him what kind of gun did he have. He said, 'I had a .25.'
"I said, 'Where did you shoot him at?'
"He said, 'I shot him in the chest.'
"He said, 'They had a knife and I was trying to defend myself.' "

Dorothy Lee Cooper on cross-examination by the defense testified (Page 171, Line 17 through Line 29):

"Q    But you say you didn't see somebody jump off the car and grab him by the arms?
"A    His brother jumped off the car.
"Q    And grabbed him by the arms?
"A    I believe so. He jumped off the car.
"Q    And when he grabbed him by the arms, what happened?
"A    That's when he started shooting.
"Q    But you didn't see a gun or anything until this man jumped off the car? You didn't, did you?
"A    I ain't seen it until he jumped off the car and jumped on him.
"Q    When he jumped on him, what happened? Tell the jury.
"A    He fired the gun and all of them went to running."

believed that he was being attacked with a knife, and therefore that the defendant was acting in self-defense. The jury therefore should have been instructed on self-defense, as requested by counsel at trial.

In every criminal case, a defendant is entitled to have the jury instructed on any theory of defense that the evidence discloses, however improbable the evidence supporting it may be. Lisby v. State, 82 Nev. 183, 414 P.2d 592 (1966); Barger v. State, 81 Nev. 548, 407 P.2d 584 (1965); State of Nevada v. Millain, 3 Nev. 409 (1867).

It makes no difference which side presents the evidence, as the trier of the fact is required to weigh all of the evidence produced by either the state or the defense before arriving at a verdict. The test for the necessity of instructing the jury is whether there is any foundation in the record for the defense theory. *See* United States v. Garcia, 452 F.2d 419 (5th Cir. 1971); Brooke v. United States, 385 F.2d 279 (D.C. Cir. 1967); People v. McEvoy, 337 N.E.2d 437 (Ill.App. 1975); Thompson v. State, 521 S.W.2d 621 (Tex.Crim. 1974); *cf.* State v. Weaver, 217 S.E.2d 31 (S.C. 1975). The testimony of the defendant is not the determining factor as to what legal defenses may be shown by the evidence; such a rule would improperly remove from the jury the question of the defendant's credibility. Strauss v. United States, 376 F.2d 416 (5th Cir. 1967); *see also* State v. Fuchs, 78 Nev. 63, 368 P.2d 869 (1962).

Under the instant set of facts, the evidence warranted instruction on self-defense, and the failure to so instruct was error. The judgment of conviction is reversed and the case is remanded for a new trial.

GUNDERSON, C. J., and MANOUKIAN, BATJER, and MOW-BRAY, JJ., concur.