VALERIE MOORE, EILEEN RENE CUNNINGHAM, AND
JAMES RAYMOND MAYFIELD, Appellants, v. THE
STATE OF NEVADA, Respondent.

No. 18740

June 30, 1989 776 P.2d 1235

*David Parraguirre,* Public Defender, and *Jane McKenna* and *Bert George,* Deputy Public Defenders, Washoe County, for Appellant Moore.

*Richard Legarza,* Reno, for Appellant Cunningham.

*Ohlson & Edmiston,* Reno, for Appellant Mayfield.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

The Reno police discovered the body of Kathleen Kennedy, lying face down in an alley. Kennedy had suffered numerous injuries, but died as a result of a laceration to her face and bleeding inside the skull. A jury convicted the three appellants, Valerie Moore, Eileen Cunningham and James Mayfield, of second degree murder with the use of a deadly weapon, namely a large stone or a tree stump. For the reasons expressed below, we affirm the convictions of Moore and Cunningham, and we reverse Mayfield's conviction.

On the afternoon of February 27, 1987, Kennedy, the victim, was drinking with appellants and other acquaintances who lived on Elko Avenue in Reno. Four of the women, Kennedy, Moore, Cunningham and Kim Parks, went next door to Parks' apartment. While at the apartment, they continued to drink. Parks put Cunningham's daughters, Rene and Stephanie Winston, in the bedroom to watch television.

At trial, four eyewitnesses, namely Moore, Parks, Rene and Stephanie, testified regarding the events which led to Kennedy's death. They discussed a fight in the apartment involving the four women. Although testimony differed on the particulars of the fight and what subsequently occurred, the jury evidently believed the following testimony.

Rene and Stephanie testified that once the fight ended, all of them left Parks' apartment. Rene and Stephanie stated that they saw their mother and Moore carry Kennedy to a nearby common area where a pickup truck and tree stump were located. They testified that Moore picked up a large rock and threw it at Kennedy. However, neither girl said that she saw the rock strike Kennedy.

Subsequently, the four eyewitnesses and Cunningham walked

to a nearby convenience store. All four eyewitnesses testified that shortly after they returned from the store, Mayfield arrived. Parks further testified that Mayfield asked Cunningham where Kennedy was. Mayfield and Cunningham left for a moment and returned with Mayfield dragging Kennedy by the feet and Cunningham kicking her. According to Parks, when they stopped by the front steps, both Cunningham and Mayfield kicked Kennedy several times, "just thumping her all over."

Parks stated that she heard the others make the following comments. Mayfield said to Cunningham: "I love you, and I don't mind doing 20 years for you." Cunningham replied: "We might as well finish the bitch off." Moore chimed in: "You might as well kill the bitch." Parks testified that Mayfield and Cunningham then dragged Kennedy to the back area. However, Parks did not know what happened back there.

The physical evidence supported this version of the events. When the police investigated the crime scene, they discovered a pool of blood around the body. Additionally, they found a large amount of blood around the tree stump in the common area. They also found blood spattered on the pickup truck and on and about the rock, both located near the tree stump. Finally, the police traced drag marks and a blood trail which ended in a pool of blood directly in front of the steps to Parks' apartment.

On appeal, Moore argues that the district court erred in finding Cunningham's daughters, Stephanie and Rene Winston, competent to testify. Specifically, Moore states that at the time of the murder, Stephanie was six years old and Rene was eight years old. According to Moore, the *voir dire* and testimony of the girls reveal serious deficiencies in their ability to receive just impressions of events and truthfully relate them. We disagree.

"The standard of competence of a child witness is that the child must have the capacity to receive just impressions and possess the ability to relate them truthfully." Smith v. State, 100 Nev. 570, 573, 688 P.2d 326, 328 (1984). (Citation omitted.) This court will not disturb a trial court's finding of competency to testify absent a clear abuse of discretion. *Id.* On appeal, we are not confined to a review of the *voir dire* examination. Wilson v. State, 96 Nev. 422, 423, 610 P.2d 184, 185 (1980). Rather, we may also look to subsequent testimony which may support a finding of competence "if clear, relevant and coherent." *Id.* (Citation omitted.)

Having reviewed the *voir dire* examinations of Stephanie and Rene and their subsequent testimony, we conclude that both witnesses were competent to testify. A detective interviewed the

girls on three occasions. He testified that Stephanie was dis-jointed in her thoughts in that she did not comprehend time very well. However, the detective also stated that Stephanie had very good recall, and in all three interviews, Stephanie's recollections were consistent. Stephanie's trial testimony, which was generally clear and relevant, further supports the district court's finding of competence.

The majority of Rene's trial testimony was coherent and lucid, even though she could not remember some of her grand jury testimony. However, the grand jury testimony that she could not recall concerned incriminating actions taken by her mother and Mayfield. Thus, these omissions raised an issue as to Rene's credibility, not her competency. Accordingly, the district court correctly admitted the testimony of Stephanie and Rene Winston.

Cunningham contends that the legislature never intended the deadly weapon enhancement provision to apply to murders committed with a large stone or tree stump. Rather, she maintains that "deadly weapons" should refer only to instruments which by their very nature are deadly as a matter of law. Cunningham also argues that insufficient evidence exists to support a finding that she used a deadly weapon to murder Kennedy. We disagree.

When the legislature enacted NRS 193.165, the deadly weapon enhancement provision, it declined to define "deadly weapon," leaving this task to the judiciary. Recently, we adopted a functional approach to determine whether an instrument was a "deadly weapon." Clem v. State, 104 Nev. 351, 357, 760 P.2d 103, 106-107 (1988). Applying the functional test, the court considers how an instrument was used and the facts and circumstances of its use. *Id.*

In *Clem,* we held that a red-hot table fork and a heated electric iron were deadly weapons. *Id.* at 357, 760 P.2d at 107. Both instruments can cause serious bodily injury or death, as evidenced by the victim's burns. *Id.* Moreover, the evidence at trial clearly indicated the defendant's intent to injure and disfigure with the iron and fork. *Id.* Therefore, we concluded that defendant's sentences were properly enhanced. *Id.*

Consequently, *Clem* refutes Cunningham's contention that we should limit "deadly weapons" to those instruments that are inherently deadly. As with Clem's use of the heated table fork and iron, Moore's use of the large stone demonstrated an intent to injure Kennedy. Accordingly, the rock was a deadly weapon.

Additionally, Cunningham correctly asserts that all testimony concerning the rock involved Moore's use or possible use of a

rock. Further, she argues that the record fails to show that she was close enough to Moore when Moore had the rock to be aware of Moore's possession or use of the rock. Finally, Cunningham contends that the parties presented no evidence that she had the ability to exercise control over the rock.

In Anderson v. State, 95 Nev. 625, 600 P.2d 241 (1979), we stated our position as to what constitutes "possession" in cases involving crimes committed with a deadly weapon.

> Therefore, in our view, the possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only when the unarmed participant has knowledge of the other offender's being armed, and where the unarmed offender has, as here, the ability to exercise control over the firearm.

*Id.* at 630, P.2d at 244.

Respondent stresses the testimony of Cunningham's daughters, Rene and Stephanie, who stated that Cunningham and Moore carried Kennedy away from the apartment to the area immediately next to the tree stump. At this point, Moore picked up a rock and threw it at Kennedy. According to Rene's testimony, Cunningham did not try to stop Moore from throwing the rock.

When reviewing the evidence supporting a jury's verdict, the question is not whether this court should find guilt beyond a reasonable doubt, but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find guilt to that certitude. Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984).

In the instant case, the prosecution presented sufficient evidence for a rational jury to find, beyond a reasonable doubt, that Cunningham had constructive possession of the rock. *Id.* Once Moore picked up the rock, Cunningham had knowledge of Moore's possession of a deadly weapon. Moreover, Cunningham had the ability to exercise control, even if only to verbally deter Moore from throwing the rock. *Anderson,* 95 Nev. at 630, 600 P.2d at 244. Thus, the jury properly convicted Cunningham of second degree murder with the use of a deadly weapon.

Mayfield contends that we should extend defendant's right to jury instructions to cases involving lesser related offenses. Presently, Nevada law requires jury instructions on defendant's theory of the case when the theory involves a defense or a lesser included offense. *E.g.,* Williams v. State, 99 Nev. 530, 665 P.2d 260 (1983); Allen v. State, 97 Nev. 394, 632 P.2d 1153 (1981). However, the rationale for allowing defendant's theory of the

case instructions also applies to instructions on lesser offenses related to that charged. Consequently, we agree with Mayfield's contention.

In People v. Geiger, 674 P.2d 1303 (Cal. 1984), the California Supreme Court observed that

> [i]nstructions on lesser offenses are required because a procedure which affords the trier of fact no option other than conviction or acquittal when the evidence shows that the defendant is guilty of some crime but not necessarily the one charged, increases the risk that the defendant may be convicted notwithstanding the obligation to acquit if guilt is not proven beyond a reasonable doubt. The pressures which create that risk thus affect the reliability of the fact finding process and thereby undermine the reasonable doubt standard.

*Id.* at 1307-1308. Likewise, we conclude that fairness to the defendant requires instructions on related but not necessarily included offenses. Moreover, we determine that the benefit of instructions on related offenses serves the interest of the State. Such an instruction permits conviction of a defendant who is clearly guilty of a lesser related offense, and avoids acquittal because the prosecution fails to prove the charged offense.

 █

Preliminarily, we note that a defendant has no general right to have the jury presented with a shopping list of alternatives to the crimes charged by the prosecution. However, we hold that the jury should receive instruction on a lesser-related offense when three conditions are satisfied: (1) the lesser offense is closely related to the offense charged; (2) defendant's theory of defense is consistent with a conviction for the related offense; and (3) evidence of the lesser offense exists. *Geiger,* 674 P.2d at 1304.

 █

Applying the three prerequisites to the facts of this case, we conclude that the jury should have had the opportunity to find Mayfield guilty of the lesser related offense of accessory after the fact. First, the lesser offense is closely related to the offense charged. Whether Kennedy was alive at the time Mayfield returned to Elko Avenue determines his guilt of the lesser offense, accessory after the fact, or the charged offense, murder.

Next, Mayfield's theory of defense is consistent with the offered instruction concerning the related offense. In his counsel's opening statement, he alleged that Mayfield took the corpse of Kennedy by the legs and attempted to hide and dispose of the corpse.

Finally, evidence exists that Mayfield committed the lesser offense. Dr. Lawrie, the State's witness, testified that Kennedy received an extensive laceration to the forehead which tore the skin and scalp away from the bone. He further testified that such an injury required considerable force, inflicted in a glancing manner by a blunt object. Dr. Salvadorini, called as a witness by Mayfield, testified that Kennedy would have died within five to eight minutes after receiving such a blow.

Rene and Stephanie presented testimony that before going to the store, Moore struck Kennedy with a large rock. The testimony of all four eyewitnesses indicated that Moore, Parks, Cunningham, and her two children walked to the store to buy some beer and some food, and they walked back. All testified that Mayfield did not arrive at Elko Avenue until after everyone returned from the store. Thus, the above testimony provides some evidence that Mayfield committed the lesser offense of being an accessory after the fact.

Accordingly, the district court's failure to give the requested instruction of accessory after the fact requires reversal of Mayfield's conviction. Therefore, we reverse and remand the case for a new trial as to Mayfield. However, we affirm the convictions of Moore and Cunningham of second degree murder with the use of a deadly weapon.