OPINION
By the Court,
Leavitt, L:
Appellant Frank M. Peck was convicted of two counts of sexual assault. His defense at trial was that the sexual encounter with the victim was consensual. On appeal he asserts that the district court erred by: (1) failing to instruct the jury on the lesser-included offense of battery with intent to commit sexual assault and the lesser-related crimes of indecent exposure and open or gross lewdness; (2) denying his motion to suppress evidence obtained after a search of his apartment; and (3) allowing his wife to testify against him. He further claims that his conviction is barred by double jeopardy and the principle of merger of offenses. We have considered appellant’s claims and conclude that they lack merit. Therefore, we affirm appellant’s conviction.

FACTS

The events leading to the convictions below occurred following a University of Nevada football game in Reno, Nevada. The victim, who had been drinking, was accosted by appellant Frank M. Peck (hereinafter “Peck”) as she was urinating under some trees bordering a parking lot near Mackay Stadium. Peck grabbed her *843 around the neck, covered her mouth, and told her that he had a knife and would kill her if she screamed. He dragged her backwards causing her to fall down. According to the victim, Peck digitally assaulted her and then forcibly engaged her in sexual intercourse. She also claimed that, after discontinuing the assault, he masturbated. Peck testified at trial that he approached the victim while she was urinating and admitted digitally penetrating her prior to consensual sexual intercourse. He denied that the victim fell to the ground and claimed they had consensual sexual intercourse while standing up.
While on her back, the victim felt a set of keys on the ground. She took the keys and ran to a friend’s house nearby. The police were notified and began an investigation of the incident. The victim and the officers returned to the parking lot where the officers located the automobile. The car was registered to Peck and his wife.
The victim was taken to the hospital for an examination. She had no serious physical injuries, but the nurse noticed that she had leaves and grass in her hair and on her clothing.
Upon arrival at the Peck residence, officers were greeted by Mrs. Peck. She partially opened the door and asked the officers to wait while she retrieved a bathrobe. The evidence is conflicting with regard to the events that followed. The officers testified that Peck’s wife invited them to enter the apartment. Mrs. Peck testified that the officers barged in while she was getting her bathrobe. She admitted signing a consent to search form, but claimed the officers told her that if she refused to sign the form, they would get a warrant, return, and tear up the apartment.
The officers testified they asked her if her husband was hiding in the bathroom and she responded, “Yeah.” The officers entered the bathroom and found Peck attempting to crawl into a closet. They also found evidence in the bathroom that Peck had shaved his beard after he returned home that night. This evidence was the subject of a motion to suppress, which was denied by the district court.
The jury was unable to reach a verdict at Peck’s first trial, and the district court declared a mistrial. Prior to the declaration of mistrial, the jury foreman had completed and signed the jury verdict forms, both forms for guilty and not guilty on both counts and a form which stated that Peck’s statements to the police were voluntary. The verdicts were not accepted by the trial judge, the jury was not questioned to determine if the verdicts were unanimous, and they were not recorded in the minutes of the court.
Peck was retried and the jury returned a verdict of guilty on both counts.

*844
DISCUSSION

Instructions to the jury

Peck contends that the district court erred by refusing to instruct the jury on proffered lesser-related or lesser-included offenses. The requested instructions included indecent exposure, open or gross lewdness, and battery with intent to commit, sexual assault.
“We have previously held that ‘[a] defendant in a criminal case is entitled, upon request, to a jury instruction on his theory of the case so long as there is some evidence, no matter how weak or incredible, to support it.’” Harris v. State, 106 Nev. 667, 670, 799 P.2d 1104, 1105-06 (1990) (quoting Roberts v. State, 102 Nev. 170, 172-73, 717 P.2d 1115, 1116 (1986) (quoting Williams v. State, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983))).
This court has held “to determine whether an offense is necessarily included in the offense charged, the test is whether the offense charged cannot be committed without committing the lesser offense.” Lisby v. State, 82 Nev. 183, 187, 414 P.2d 592, 594 (1966) (citing State v. Carter, 79 Nev. 146, 379 P.2d 945 (1963); State v. Holm, 55 Nev 468, 37 P.2d 821 (1935)). Where “there is evidence which would absolve the defendant from guilt of the greater offense or degree but would support a finding of guilt of the lesser offense or degree,” an instruction on the lesser-included offense is mandatory even if not requested. Id. at 187, 414 P.2d at 595. However, it is not error to refuse to instruct the jury on an issue that is contrary to the defendant’s testimony. Ruland v. State, 102 Nev. 529, 531, 728 P.2d 818, 819 (1986).
Here, a jury instruction on the lesser-included offense of battery with intent to commit sexual assault was inconsistent with Peck’s testimony that the sexual encounter was consensual. Thus, the district court did not err in refusing to give the instruction.
In Moore v. State, 105 Nev. 378, 383, 776 P.2d 1235, 1238 (1989), we concluded, “fairness to the defendant requires instructions on related but not necessarily included offenses.” We held that a ‘ ‘jury should receive instruction on a lesser-related offense when three conditions are satisfied: (1) the lesser offense is closely related to the offense charged; (2) defendant’s theory of defense is consistent with a conviction for the related offense; and (3) evidence of the lesser offense exists.” Id. The principle was taken from People v. Geiger, 674 P.2d 1303, 1304 (Cal. 1984).
Prior to the decision in Moore we held “. . . if the offense for which the defendant is found guilty is not necessarily included *845 within the offense charged, the conviction is void and must be set aside.” McKinnon v. State, 96 Nev. 821-22, 618 P.2d 1222 (1980). See also State v. Carter, 79 Nev. 146, 379 P.2d 945 (1963) where this court held a jury verdict was a nullity and void for purporting to convict a defendant for an offense that was not charged in an information nor necessarily included as a lesser offense.
The California Supreme Court recently overruled Geiger in People v. Birks, 960 P.2d 1073 (Cal. 1998). The court stated, “since Geiger was decided, all arguable federal support for its conclusions has been withdrawn . . . and the rationale of that decision has been unequivocally repudiated by the United States Supreme Court.” Id. at 1082 (citing Hopkins v. Reeves, 524 U.S. 88 (1998), reh’g denied, 524 U.S. 968 (1998); Schmuck v. United States, 489 U.S. 705 (1989)). The Birks court noted that “[t]he Geiger rule contravenes the principle of mutual fairness by giving the defendant substantially greater rights either to require, or to prevent, the consideration of lesser nonincluded offenses than are accorded to the [State], the party specifically responsible for determining the charges.” Id. at 1084. Additionally, by allowing convictions only on lesser-included offenses and not on lesser-related offenses both the prosecution and defense will know in advance what elements must be proven at trial, what jury instructions will be available and may prepare accordingly.
Given the recent evolution of the “lesser related” doctrine and our previous holdings on this issue, a re-examination of our decision in Moore is appropriate. We therefore now conclude that allowing instructions on offenses that are not included offenses, but are merely related offenses, makes the fairness of a verdict questionable. To allow a conviction on a crime that the State has not even attempted to prove is not a reliable result, therefore, we expressly overrule Moore as it pertains to the necessity of giving a jury instruction on a lesser-related offense.
In view of our decision, we determine that the district court did not err in refusing to give a jury instruction on the lesser-related offenses of indecent exposure, or open or gross lewdness.

Evidence obtained from appellant’s apartment

Peck claims that the entry and search of his apartment was illegal and that the evidence obtained should have been suppressed. There was conflicting evidence presented during the suppression hearing. The police testified that Peck’s wife invited them into the
*846 apartment and she voluntarily signed a consent to search form. Peck’s wife stated that the officers came in when she went to get her bathrobe and she signed the consent form only after the officers threatened that if she did not sign they would obtain a search warrant, return and tear up the apartment. The district court denied the motion to suppress.
“[Findings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence.’ ’ Stevenson v. State, 114 Nev. 674, 679, 961 P.2d 137, 140 (1998); see also Rice v. State, 113 Nev. 425, 427, 936 P.2d 319, 320 (1997). Further, a district .court’s findings of fact are reviewed under a deferential standard. See Hayes v. State, 106 Nev. 543, 550 n.1, 797 P.2d 962, 966 n.1 (1990).
“[A] waiver and consent, freely and intelligently given, converts a search and seizure which otherwise would be unlawful into a lawful search and seizure.” State v. Plas, 80 Nev. 251, 254, 391 P.2d 867, 868 (1964). “Whether in a particular case an apparent consent to search without a warrant was voluntarily given is a question of fact.” Id. at 253, 391 P.2d at 868. “This court is not a fact-finding tribunal; that function is best performed by the district court.” Zugel v. Miller, 99 Nev. 100, 101, 659 P.2d 296, 297 (1983).
In this case, the district court resolved the discrepancies in the testimony in favor of the police officers and ruled that the consent to enter the apartment and search was voluntarily given by Peck’s wife. There was sufficient evidence to support the ruling and the district court did not err when it refused to suppress the evidence obtained during the search of the apartment.

Spousal immunity

Peck’s wife was subpoenaed and testified for the State as an adverse witness. Peck claims this was a violation of the spousal privilege set forth in NRS 49.295.[1]
*847 A spouse has a statutory privilege to refuse to take the stand when called to testify against his or her spouse. NRS 49.295(l)(a). This privilege belongs to the testifying spouse and in this case could only be waived by [the spouse] if and when she took the stand. . . . [T]he testifying spouse privilege is only waived by taking the stand at trial and testifying
[The defendant] also enjoyed the privilege to prevent [his spouse] from testifying regarding any statements made in reliance on marital confidence.
Franco v. State, 109 Nev. 1229, 1243-44, 866 P.2d 247, 256 (1993) (footnote omitted).
Peck’s wife waived her privilege when she testified in the case and failed to invoke the right not to testify. Peck likewise waived his privilege to prevent his wife from testifying by not specifically stating his objection prior to her testimony. Peck argues that his wife did not voluntarily consent to testify because she was subpoenaed by the State. We disagree. A subpoena merely compels the attendance of a witness at trial. The privilege could have been invoked prior to her testifying. The failure to do so waives the privilege.

Double jeopardy—merger of offenses

Peck’s double jeopardy claim is based on his first trial, which ended in a mistrial. Prior to the district court declaring a mistrial, the jury foreman had signed verdict forms finding Peck both guilty and not guilty of Count I, Sexual Assault, the digital penetration of the victim’s vagina. Peck claims that Count I could not be litigated again in a second trial based upon the principles of double jeopardy and merger of offenses.
The prohibition against double jeopardy ‘ ‘protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.” State v. Lomas, 114 Nev. 313, 315, 955 P.2d 678, 679 (1998); see also Gordon v. District Court, 112 Nev. 216, 220, 913 P.2d 240, 243 (1996).
Peck was not acquitted at his first trial. Although the jury foreman signed the verdict form finding Peck not guilty of Count I, the verdict was not accepted by the district judge. The jury was not polled to determine if the verdict was unanimous, and the ver *848 diet was not recorded in the minutes of the court. Instead, the district judge declared a mistrial after questioning the jury foreman and ascertaining that the jury was unable to reach a verdict. When a mistrial has been declared by a district court, a defendant may be retried without implicating the Double Jeopardy Clause of the United States Constitution. Beck v. District Court, 113 Nev. 624, 939 P.2d 1059 (1997).
Peck contends that the two counts of sexual assault should be merged, citing Townsend v. State, 103 Nev. 113, 734 P.2d 705 (1987), in support of his claim. In Townsend, we held that only one sexual assault occurred when Townsend’s actions were continuous and did not stop between the different acts. Townsend began lubricating the victim’s vaginal area, stopped to put more lubricant on his finger and then penetrated the child’s vagina with his finger. We held that these acts could not be charged as more than one sexual assault because “[s]uch a hypertechnical division of what was essentially a single act is not sustainable.” Id. at 121, 734 P.2d at 710.
Peck also cites Oswald v. State, 715 P.2d 276 (Alaska Ct. App. 1986), as authority that an act of digital penetration merges with the act of genital penetration into one offense. However, the Oswald case was overruled a year later in Rodriquez v. State, 741 P.2d 1200 (Alaska Ct. App. 1987), wherein the court held that separate convictions are permissible where each conviction is for a different type of sexual penetration. The Alaska court reinforced the holding in Yearty v. State, 805 P.2d 987 (Alaska Ct. App. 1991), where it upheld separate convictions for multiple acts of penetration which involved different types of sexual penetration. The court held that the convictions did not merge. Id. at 993.
Peck testified at trial that he first fondled the victim digitally, partially removed some of her clothing, and then stopped before engaging in sexual intercourse. “The great weight of authority supports the proposition that separate and distinct acts of sexual assault committed as a part of a single criminal encounter may be charged as separate counts and convictions entered thereon.” Deeds v. State, 97 Nev. 216, 217, 626 P.2d 271, 272 (1981); see also Hamill v. State, 602 P.2d 1212 (Wyo. 1979); People v. Perez, 153 Cal. Rptr. 40 (1979); People v. Saars, 584 P.2d 622 (Colo. 1978); People v. Robinson, 264 N.W.2d 58 (Mich. Ct. App. 1978); State v. Hill, 450 P.2d 696 (Ariz. 1969). We have previously upheld four counts of sexual assault that occurred during one attack upon a victim. Hutchins v. State, 110 Nev. 103, 867 P.2d 1136 (1994).
*849 In this case, there was no merger between the forced digital penetration and the coercive sexual intercourse because both acts were separate and distinct acts of sexual assault. These separate acts cannot be considered a “hypertechnical division of what was ... a single act.” Townsend, 103 Nev. at 121, 734 P.2d at 710.

CONCLUSION

After carefully reviewing Peck’s various claims of error and by reason of the foregoing, his convictions of two separate and distinct sexual assaults are affirmed.
Young, Shearing, Agosti and Becker, JJ., concur.

NRS 49.295 provides in pertinent part as follows:
1. Except as otherwise provided in subsections 2 and 3 and NRS 49.305:
(a) A husband cannot be examined as a witness for or against his wife without his consent, nor a wife for or against her husband without her consent.
(b) Neither a husband nor a wife can be examined, during the marriage or afterwards, without the consent of the other, as to any communication made by one to the other during marriage.