147 P.3d 1101 (2006)
Carlos Mendez ROSAS, A/K/A Carlos Mendez-Rosas, Appellant,
v.
The STATE of Nevada, Respondent.
No. 43691.
Supreme Court of Nevada.
December 21, 2006.
*1102 Nathalie Huynh, Reno, for Appellant.
George Chanos, Attorney General, Carson City; Richard A. Gammick, District Attorney, and Terrence P. McCarthy, Deputy District Attorney, Washoe County, for Respondent.
*1103 Before the Court En Banc.

OPINION
PER CURIAM.
At his trial for battery upon an officer, appellant Carlos Mendez Rosas sought jury instructions on a lesser-included offense and on self-defense. Though State and defense witnesses presented some evidence to support both theories, the district court rejected the proffered instructions. This was error.
Pursuant to Nevada statutory and case law, a defendant may be convicted of a lesser offense that is necessarily included in the charged offense. A defendant in Nevada has a right to a jury instruction on such a lesser-included offense as long as there is some evidence to support the offense. However, a few decisions by this court have identified an additional requirement for defendants seeking lesser-included instructions, namely that the lesser-included offense be consistent with the theory of defense or even the defendant's testimony. The district court imposed this requirement in this case. However, we conclude that this requirement has no basis in the controlling statute and is inconsistent with the majority of this court's case law and with a defendant's right to present a defense.
We therefore reverse Rosas's conviction and remand, overruling our prior cases insofar as they have propounded this exception.[1]

FACTS
The State charged Rosas with battery upon an officer causing substantial bodily harm, a felony. The charge was later reduced to battery upon an officer, a gross misdemeanor.
Reno Police Department (RPD) Officer Jason Morgan testified as follows. He was alone on patrol in downtown Reno in the early morning of October 13, 2002, when he saw a woman (Brena Baldwin) striking a man (Rosas) on the east side of West Street between First and Second Streets. Morgan activated his overhead lights and parked his patrol car in the northbound lane of West Street. He got out of his car and yelled to get the woman's attention, and she responded with abusive language. When he approached, Baldwin retreated behind Rosas, but Rosas and a second woman (Michelle Nielsen) eventually cornered Baldwin in a doorway, allowing Officer Morgan to handcuff her. The officer took her to his car and put her in the back seat. When he turned around, Rosas was right behind him. Officer Morgan repeatedly asked Rosas to step onto the sidewalk, but Rosas ignored the requests and cursed him. When the officer lightly touched Rosas's shoulder, Rosas knocked the officer's hand away, dropped into a fighting stance, and raised his fists. Officer Morgan saw Rosas prepare to raise his foot as if to deliver a kick, so Morgan stepped behind Rosas and took him down. But the officer fell on his back with Rosas on top, and Rosas began striking the officer in the face. Rosas then stood up, was shot with a taser by another officer, fell to the ground, and offered no more resistance. Morgan testified that he could not recall but believed that he did not carry a taser that night.
RPD Sergeant Jeffrey Kaye testified that he drove his patrol vehicle to the scene to assist Officer Morgan. While still in his car, he saw Officer Morgan move behind Rosas. The two began to wrestle and went to the ground. Rosas ended up on top of Officer Morgan, hitting him in the head. Kaye pulled up, stepped out of his vehicle, and shot Rosas with his taser.
The State also called Michelle Nielsen to testify. She was with her friend Baldwin that night at a nightclub in the Comstock Casino, where Baldwin's boyfriend Rosas was working security. Baldwin began to argue with him because he was talking with some other women. Nielsen went with Baldwin and Rosas out onto the street, where the argument continued. When Officer Morgan arrived, he pulled out his taser gun, activated it, and "asked if they wanted some of that." The officer handcuffed Baldwin, and she hit her head as he put her in the police car. *1104 When Rosas tried to calm Baldwin down, the officer told Rosas to get away from the car and then tackled him from behind. Rosas had not said or done anything to threaten the officer. Nielsen never saw either man hit the other as they wrestled on the ground.
RPD Sergeant Walt Frazier investigated the incident and found that Sergeant Kaye's use of the taser on Rosas was consistent with department policy. Sergeant Frazier also took an audiotaped statement from Officer Morgan in which Morgan said that he removed and activated his own taser when he confronted Baldwin. Morgan also stated that he came up behind Rosas, put his arm around Rosas's torso-neck area, and took him to the ground.
Both Baldwin and Rosas took the stand in their own defense. Baldwin testified that she was engaged to Rosas at the time of the incident. Baldwin had had quite a few drinks that night when she began to argue with Rosas. He took her outside, she tried to grab him, and he kept backing away and laughing. When Officer Morgan arrived, Baldwin told him to go away. Morgan took out his taser gun, activated it, and asked if she "want[ed] some of this." Baldwin hid behind Rosas, but Rosas and Nielsen backed her into a corner, and the officer handcuffed her and put her in his car. She hit her head at this time. From the car, Baldwin saw the officer jump on Rosas when Rosas's back was turned, and the two wrestled on the ground.
Rosas testified that he, Baldwin, and Nielsen were on the street when Officer Morgan approached and activated his taser gun. Rosas and Nielsen helped the officer corner Baldwin. Rosas felt that the officer was a bit rough in handcuffing Baldwin and pushing her into the car, when she hit her head. He approached the officer and asked to talk. The officer became upset and told him to go to the sidewalk. Rosas did not do so immediately, but complied after the officer told him a second time. When Rosas turned, the officer jumped on him and grabbed him by the neck. They fell to the ground. Rosas was being choked and tried to take the officer's hands from his neck but never struck the officer. When he stood up, he was hit by the taser.
In settling jury instructions, the district court rejected instructions proffered by Rosas on the lesser misdemeanor offense of resisting a public officer. The court concluded that Rosas was not entitled to the instructions because he had not admitted to any wrongdoing. The court similarly rejected Rosas's proffered instruction on self-defense, as "outside the defendant's theory and [having] no evidence to support it." And it rejected his proffered instruction stating that to prove battery upon an officer, the State had to prove beyond a reasonable doubt that the officer was engaged in the performance of his duties.
The jury found Rosas guilty of battery upon an officer and acquitted Baldwin of a like charge. A judgment of conviction was entered,[2] and he was sentenced to six months in jail.

DISCUSSION
Rosas contends that the district court erred in denying all of his proffered jury instructions. The main question in this case is whether the district court should have instructed the jury on the lesser-included offense of resisting a public officer. We will therefore discuss only briefly the other two instructions that Rosas sought.
First, the district court erred in rejecting the jury instruction on self-defense. "A defendant in a criminal case is entitled, upon request, to a jury instruction on his or her theory of the case, so long as there is some evidence, no matter how weak or incredible, to support it."[3] In this case, some evidence was presented that the officer assailed Rosas and Rosas simply tried to fend the officer off. This evidence supported a theory of self-defense, and Rosas was entitled to have the jury instructed on this theory.
Second, the district court also erred in rejecting an instruction stating that to *1105 establish a violation of NRS 200.481, the State had the burden of proving beyond a reasonable doubt that the officer was engaged in the performance of his duties. This was a necessary element of the charged offense: NRS 200.481(2)(d) provides in pertinent part that a battery is a gross misdemeanor if it is committed on an officer "who is performing his duty." Further, contrary to the State's claim, the proposed instruction did not include any language permitting the use of force by the accused.
Resisting a public officer is a lesser-included offense of battery upon an officer
Rosas contends that resisting a public officer, a misdemeanor under NRS 199.280, is a lesser-included offense of battery upon an officer, the gross misdemeanor that Rosas was convicted of under NRS 200.481. The district court agreed with Rosas on this point. The State, however, maintains that resisting a public officer is not included within battery upon an officer.
This court's precedent is contrary to the State's position. In Walker v. State, we concluded that an inmate convicted of battery on a peace officer with the use of a deadly weapon was entitled to an instruction on the lesser offense of resisting a public officer under NRS 199.280.[4] Nevertheless, because Walker did not explain why resisting a public officer was a lesser-included offense of battery upon an officer, we will briefly analyze this issue.
A lesser offense is included in a greater offense "when all of the elements of the lesser offense are included in the elements of the greater offense."[5] Here, all the elements of resisting a public officer under NRS 199.280 are included in the elements of battery upon an officer under NRS 200.481. NRS 199.280 provides that a person who "[1] willfully [2] resists, delays or obstructs [3] a public officer [4] in discharging or attempting to discharge any legal duty of his office" is to be punished for a misdemeanor, absent use of a dangerous weapon. NRS 200.481(1)(a) defines battery as "any [1] willful and unlawful [2] use of force or violence upon the person of another." NRS 200.481(2)(d) further provides that a battery is a gross misdemeanor if it is committed "[3] upon an officer . . . [4] who is performing his duty . . . and [5] the person charged knew or should have known that the victim was an officer," absent an enhancing circumstance.
As indicated by the bracketed numbers, the misdemeanor has four elements, while the gross misdemeanor has five. And despite some variation in language, the misdemeanor's four elements are all included in the first four elements of the gross misdemeanor. We reject the State's contention that the second elements of each offense are not equivalent and that force or violence can be used on an officer without resisting, delaying, or obstructing the officer.
We conclude that resisting a public officer under NRS 199.280 is a lesser-included offense of battery upon an officer under NRS 200.481.
Appellant was entitled to instruct the jury on the lesser-included offense
NRS 175.501 provides: "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." This rule developed at common law to aid prosecutors in cases where they failed to prove the charged offense but the evidence supported conviction on a lesser offense.[6] Eventually the right of defendants to jury instructions on lesser-included offenses was recognized as well, and it is "beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser *1106 offense and acquit him of the greater."[7] A defendant is entitled to such an instruction because of the "substantial risk" that a jury will convict despite a failure to prove the charged offense if the defendant appears guilty of some offense.[8]
Insofar as the rule permitting conviction on a lesser-included offense benefits a defendant, it fits within the general right a defendant enjoys to a jury instruction on his theory of the case.[9] Under NRS 175.501, the only condition required to obtain such an instruction is that the lesser offense be "necessarily included" in the charged offense. However, courts have recognized an additional requirement, namely that there be evidence warranting instruction on the lesser-included offense.[10] In Nevada, a defendant is entitled to a jury instruction on a lesser-included offense "if there is any evidence at all, however slight, on any reasonable theory of the case under which the defendant might be convicted" of that offense.[11] Conversely, "if the prosecution has met its burden of proof on the greater offense and there is no evidence at the trial tending to reduce the greater offense, an instruction on a lesser included offense may properly be refused."[12]
Therefore, even though NRS 175.501 does not expressly require an evidentiary basis for the lesser-included instruction, this court, like courts generally, has recognized such a condition. That condition serves a useful purpose: preventing lesser-included instructions from being misused as invitations to juries to return compromise verdicts without evidentiary support.[13]
Thus, throughout its history, this court has reaffirmed the tenet that a defendant is entitled to instruction on a lesser-included offense as long as there is some evidence reasonably supporting it.[14] Yet a few relatively recent opinions by this court have recognized an exception to its application in cases where the defendant presented a defense or evidence inconsistent with the lesser-included offense or where the defendant failed to introduce evidence consistent with the lesser-included offense. The earliest such case was apparently Colle v. State in *1107 1969,[15] where this court upheld the district court's rejection of an instruction on obstructing a public officer as a lesser-included offense of interfering with a public officer. This court acknowledged that a criminal defendant "is entitled to have the jury instructed on his theory of the case as disclosed by the evidence, no matter how weak or incredible the evidence may appear to be."[16] Nevertheless, it concluded that the instruction was properly rejected because it "was not related to any theory of Colle's defense," his "sole defense" being that a different person had made threats over a telephone to a police officer.[17] The decision did not cite any authority for requiring a lesser-included offense to relate to the defendant's defense theory.[18]
In 1986, our decision in Ruland v. State[19] acknowledged that a defendant is entitled to a jury instruction on his theory of the case as long as some evidence, "no matter how weak or incredible," supports it. But Ruland then invoked "the principle that it is not error to refuse to instruct the jury on an issue which was contrary to the defendant's testimony"[20] and concluded that the appellant's "categorical denial of any criminal assault" precluded any error resulting from the failure to instruct the jury on lesser-included assault offenses.[21] The primary authority that Ruland relied on for this principle was this court's 1966 decision in Lisby v. State.[22]
Since Ruland, this court has cited Lisby alone or along with Ruland in at least three published decisions for the proposition that a defense theory or defense evidence must be consistent with a lesser-included offense in order to obtain an instruction on the offense.[23] And the district court in this case quoted extensively from Lisby in making its ruling. However, analysis of Lisby shows that it does not stand for such a proposition.[24]
Lisby sets forth the established tenet: where a lesser offense is included in the charged offense, an instruction on the lesser-included offense should not be given if "there is no evidence at the trial tending to reduce the greater offense," but should be given "if there is any evidence at all, however slight," to support a conviction for the lesser-included offense.[25]Lisby also provides an example of when an instruction should not be given: "e.g., where the defendant denies any complicity in the crime charged and thus lays no foundation for any intermediate verdict."[26]
This example has led to some misunderstanding. A few subsequent decisions have focused only on the first part of the example"where the defendant denies any complicity in the crime charged"and misconstrued it as setting forth an independent requirement that a defendant must admit culpability to obtain a lesser-included instruction. But the example is not divisible in this way. It must be read as a whole: "where the defendant denies any complicity in the crime charged and thus lays no foundation for any intermediate verdict." The controlling *1108 factor is the lack of an evidentiary foundation for the lesser offense, not denial of guilt. Consequently, if there is no foundation for an "intermediate verdict," a lesser-included instruction should not be given. But if any evidence does lay such a foundation, then an instruction should be given regardless of whether the defendant denies complicity.
Thus, Lisby is not authority for requiring a defendant to present evidence of or admit culpability for a lesser-included offense in order to receive a lesser-included jury instruction.[27] Elsewhere, this court has expressly rejected such a limit on a defendant's right to instruction on a defense theory:
In every criminal case, a defendant is entitled to have the jury instructed on any theory of defense that the evidence discloses, however improbable the evidence supporting it may be.

It makes no difference which side presents the evidence, as the trier of the fact is required to weigh all of the evidence produced by either the state or the defense before arriving at a verdict. The test for the necessity of instructing the jury is whether there is any foundation in the record for the defense theory.[28]
Furthermore, conditioning a defendant's right to an instruction on a lesser-included offense on its consistency with his overall defense is also unsound because the law has never held the prosecution to the same condition. As noted earlier, the common law first recognized the prosecution's right to instruct a jury on lesser-included offenses, and NRS 175.501 makes no distinction between prosecution and defense in providing that a defendant "may be found guilty of an offense necessarily included in the offense charged." This court has upheld the propriety of lesser-included instructions obtained by the State over objections by defendants, even where the lesser-included instruction was contrary to the theory of defense.[29] These decisions are incompatible with imposing on defendants the burden of presenting evidence or a theory of the case consistent with a lesser-included offense in order to obtain instruction on the offense.
Finally, denying a defendant's right to an instruction on a lesser-included offense, simply because he has not presented the evidence supporting it or has argued a disparate theory, is also contrary to a defendant's right to have the jury decide questions of fact. The Nevada Constitution declares that "[t]he right of trial by Jury shall be secured to all and remain inviolate forever"[30] and provides that "[j]udges shall not charge juries in respect to matters of fact."[31] And this court has held that if there is any evidence to support a lesser-included offense, the trial court should instruct on it, "leaving the jury to determine all questions of fact about which there might be any controversy among reasonable *1109 men."[32]

CONCLUSION
We reverse Rosas's conviction and overrule our prior cases insofar as they have required a defendant to present a defense or evidence consistent with or to admit culpability for a lesser-included offense in order to obtain an instruction on a lesser-included offense. The governing principle is that a defendant is entitled to a jury instruction on his or her theory of the case as long as there is some evidence to support it, regardless of who introduces the evidence and regardless of what other defense theories may be advanced. We remand this matter to the district court for proceedings consistent with this opinion.
NOTES
[1] Rosas was convicted of a gross misdemeanor and has completed his sentence, but the appeal has not been rendered moot because adverse collateral consequences result from any criminal conviction. See Knight v. State, 116 Nev. 140, 143-44, 993 P.2d 67, 70 (2000).
[2] The judgment of conviction incorrectly stated that Rosas entered a plea of guilty.
[3] Williams v. State, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983).
[4] 102 Nev. 290, 293-94, 720 P.2d 700, 702 (1986).
[5] Barton v. State, 117 Nev. 686, 690, 30 P.3d 1103, 1106 (2001).
[6] See Beck v. Alabama, 447 U.S. 625, 633, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); 5 Wayne R. LaFave et al., Criminal Procedure § 24.8(d), at 574 (2d ed.1999).
[7] Keeble, 412 U.S. at 208, 93 S.Ct. 1993; see also Beck, 447 U.S. at 635-36 n. 11, 100 S.Ct. 2382; Schmuck v. United States, 489 U.S. 705, 717 & n. 9, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); Barton, 117 Nev. at 688, 30 P.3d at 1104; Holbrook v. State, 90 Nev. 95, 96-98, 518 P.2d 1242, 1242-44 (1974).
[8] Keeble, 412 U.S. at 212-13, 93 S.Ct. 1993; see also Beck, 447 U.S. at 633-34, 100 S.Ct. 2382.
[9] Williams, 99 Nev. at 531, 665 P.2d at 261.
[10] Beck, 447 U.S. at 635-36 & n. 12, 100 S.Ct. 2382 (observing that state courts "vary in their descriptions of the quantum of proof necessary to give rise to a right" to such an instruction); see also Hopper v. Evans, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).

Another relevant consideration, not in dispute here, is whether such an instruction is requested. Generally, a defendant (or the State) must request an instruction: if there is any supporting evidence, "the court must, if requested, instruct" on a lesser-included offense. Lisby v. State, 82 Nev. 183, 188, 414 P.2d 592, 595 (1966). However, "[t]he instruction is mandatory, without request" if "there is evidence which would absolve the defendant from guilt of the greater offense . . . but would support a finding of guilt of the lesser offense." Id. at 187, 414 P.2d at 595. Cf. LaFave, supra note 6, § 24.8(f), at 591.
[11] Lisby, 82 Nev. at 188, 414 P.2d at 595; see also, e.g., State of Nevada v. Millain, 3 Nev. 409, 449 (1867).

Some decisions have incorrectly stated that instruction on a lesser-included offense can be refused as long as the evidence clearly showed guilt above the lesser offense. See Rice v. State, 113 Nev. 1300, 1310, 949 P.2d 262, 268 (1997); Holland v. State, 82 Nev. 191, 194, 414 P.2d 590, 591-92 (1966). Rather, "a court must focus on whether credible evidence admitted at trial warranted a lesser included offense, not whether the evidence was sufficient to prove the greater one." Hooks v. Ward, 184 F.3d 1206, 1232 (10th Cir. 1999) (emphasis omitted).
[12] Lisby, 82 Nev. at 188, 414 P.2d at 595 (emphasis omitted); see also Holbrook, 90 Nev. at 97, 518 P.2d at 1243; State v. Enkhouse, 40 Nev. 1, 6, 160 P. 23, 25 (1916); LaFave, supra note 6, § 24.8(f), at 586.
[13] See LaFave, supra, note 6, § 24.8(f), at 586-87; State v. Mendez, 252 N.J.Super. 155, 599 A.2d 565, 567 (App.Div.1991) ("[A] court should not submit a lesser included offense which invites the jury to engage in sheer speculation.").
[14] See, e.g., Millain, 3 Nev. at 449-50; Crawford v. State, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005).
[15] 85 Nev. 289, 294, 454 P.2d 21, 24 (1969).
[16] Id.
[17] Id.
[18] Nor did the decision explain its implicit assumption that a lesser-included instruction does not constitute a defense theory if an unrelated theory is argued. This assumption was also not valid: contending that the defendant is guilty of a lesser-included offense is an acceptable defense theory. Williams, 99 Nev. at 531, 665 P.2d at 261. And a defendant is entitled to proceed on disparate defense theories. Walker v. State, 110 Nev. 571, 576-77, 876 P.2d 646, 649 (1994).
[19] 102 Nev. 529, 531, 728 P.2d 818, 819 (1986).
[20] Id.
[21] Id. at 532, 728 P.2d at 819-20.
[22] 82 Nev. 183, 414 P.2d 592.
[23] Walker, 110 Nev. at 575-76, 876 P.2d at 649; Peck v. State, 116 Nev. 840, 844, 7 P.3d 470, 472-73 (2000); Barton, 117 Nev. at 694 n. 48, 30 P.3d at 1108 n. 48.
[24] Ruland relied mainly on Lisby but also cited Klepar v. State, 92 Nev. 103, 546 P.2d 231 (1976), People v. Brown, 131 Cal.App.2d 643, 281 P.2d 319 (1955), and State v. McNair, 141 Ariz. 475, 687 P.2d 1230 (1984). Analysis of these cases discloses that they too are not good authority for this proposition.
[25] Lisby, 82 Nev. at 188, 414 P.2d at 595 (emphasis omitted).
[26] Id. at 187, 414 P.2d at 595.
[27] Another decision by this court was also misapplied in this area of the law: Moore v. State, 105 Nev. 378, 776 P.2d 1235 (1989), overruled by Peck v. State, 116 Nev. 840, 7 P.3d 470 (2000). Moore stated in pertinent part:

[T]he jury should receive instruction on a lesser-related offense when three conditions are satisfied: (1) the lesser offense is closely related to the offense charged; (2) defendant's theory of defense is consistent with a conviction for the related offense; and (3) evidence of the lesser offense exists.
Id. at 383, 776 P.2d at 1239 (emphases added). Although Moore dealt only with lesser-related offenses, two opinions improperly relied on it directly or indirectly as authority for requiring consistency between the defense theory and a lesser-included instruction. See Walker, 110 Nev. at 574, 876 P.2d at 647-48; Wegner v. State, 116 Nev. 1149, 1156, 14 P.3d 25, 30 (2000) (citing Walker).
[28] Allen v. State, 97 Nev. 394, 398, 632 P.2d 1153, 1155 (1981) (emphases added) (citations omitted); see also State v. Moore, 48 Nev. 405, 415, 233 P. 523, 526 (1925) ("If appellant had introduced any evidence or any had otherwise appeared tending to [support the defense theory], the refusal of the instruction requested would have been error. . . . ").
[29] See Parsons v. State, 74 Nev. 302, 307-09, 329 P.2d 1070, 1073-74 (1958); State v. Oschoa, 49 Nev. 194, 199-205, 242 P. 582, 584-86 (1926); see also Ex parte Curnow, 21 Nev. 33, 24 P. 430 (1890).
[30] Nev. Const. art. 1, § 3; see also U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . . ").
[31] Nev. Const. art. 6, § 12.
[32] Millain, 3 Nev. at 449-50; see also Williams, 99 Nev. at 531, 665 P.2d at 261; Allen, 97 Nev. at 398, 632 P.2d at 1155.